IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-CV-01269-KLM

RODNEY DOUGLAS EAVES,

    Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND, and
STEVEN SALAZAR,

    Defendants.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on several motions to dismiss: (1) the **BCCF Defendants' Motion to Dismiss Plaintiff's Complaint** [#22][1] ("the BCCF Motion")[2]; (2) the **CDOC Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure** [#23] (the "CDOC Motion")[3;] and the (3) the

---

[1] "[#22]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order, and the page numbers cited are to CM/ECF.

[2] The BCCF Defendants are Jerry Roark, David Hestand, and Steven Salazar.
[3] The CDOC Defendants are Dean Williams, Travis Trani, Gypsy Kelso, Marshall Griffith, and Anthony DeCesaro.

**Governor's Rule 12(b)(1) and (6) Motion to Dismiss** [#45] (the "Governor's Motion"). The Court has reviewed the Motions [#22], the Responses [#25], the Replies [#28], the case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court **grants** the Motions and dismisses all claims.

## I. Summary of the Case

Plaintiff, who appears in this matter pro se,[4] is currently in the custody of the Colorado Department of Corrections ("CDOC") at Bent County Correctional Facility ("BCCF"). BCCF is operated by CoreCivic, a business which contracts with the State of Colorado, among other municipalities, to privately manage prisons and other correctional facilities. *BCCF Motion* [#22] at 3. Plaintiff asserts that he is Native American and a registered member of the tribe of the Sac and Fox Nation of Stroud, Oklahoma. *See Compl.* [#1] at 10. Plaintiff alleges that Defendants engaged in practices pursuant to CDOC and BCCF policy which have substantially burdened Plaintiff's religion and violated his equal protection rights.

Plaintiff brings claims under the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause pursuant to 42 U.S.C. § 1983 and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. 2000cc. Plaintiff sues all Defendants in their official capacities only. The Motions to Dismiss seek to dismiss Plaintiff's claims under both Rule 12(b)(1) and Rule 12(b)(6).

---

[4] The pleadings of a pro se litigant "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Ajaj v. United States*, No. 15-cv-02849-RM-KLM, 2020 WL 5758521, at *2 (D. Colo. Sept. 28, 2020) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). However, the Court may not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

# I.    Standard of Review

## A.    Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) provides for a claim to be dismissed where the court lacks subject matter jurisdiction.  *Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018), *aff'd*, 939 F.3d 1106 (10th Cir. 2019).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  The party asserting jurisdiction has the burden of establishing subject matter jurisdiction.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A challenge to the subject matter jurisdiction of a complaint can take the form of a facial attack or a factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  A facial attack "questions the sufficiency of the complaint" whereas a factual attack "challenge[s] the facts upon which subject matter jurisdiction depends."  *Id.* at 1002-03 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  When reviewing a facial attack on a complaint, as here, the Court accepts the allegations of the complaint as true.  *Id.* at 1002.

## B.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) may be granted if the plaintiff's complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955)).  A claim is facially plausible when the *factual* content of the complaint

enables the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Because plausibility is determined by the factual content, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In determining whether a complaint is facially plausible, the Court does not "weigh potential evidence that the parties might present at trial," but assess only the Plaintiff's complaint. *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).[5] Facial plausibility need not rise to the level of a probability but requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

## III. Analysis

### A. Mootness of Claims

The Court first finds that certain claims must be dismissed as moot. "'Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction.'" *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (quotation omitted). "Without a live,

---

[5] To the extent Plaintiff has attached matters outside the pleadings to his Response [#29] to the CDOC Motion [#23], the Court has not considered these matters as they are unauthenticated hearsay. *See Wilson v. City of Aurora*, No. 09-cv-02138-WYD-BNB, 2010 WL 3522567, at *1 (D. Colo. May 19, 2010) (declining to consider an unauthenticated document that lacked a basis for an exception to the rule against hearsay, which was submitted with a motion to dismiss). Accordingly, there is no need to convert the CDOC Motion into a motion for summary judgment.

concrete controversy [the Court] lacks jurisdiction to consider claims no matter how meritorious." *Id.* "'The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world.'" *Id.* (quotation and internal quotation marks omitted).

The Court first finds that Plaintiff's request for declaratory relief is moot and should be dismissed on this ground against all Defendants. "Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit." *Rio Grande Silvery Minnow*, 601 F.3d at 1109. When applying the mootness doctrine in the context of considering a declaratory judgment, there must be "the settling of some dispute which affects the behavior of the defendant toward the plaintiff." *Id*. at 1109-1110; *see also Jordan v. Sosa,* 654 F.3d 1012, 1025 (10th Cir. 2011). In this context, "a plaintiff must be seeking more than a retrospective opinion that he was wrongfully harmed by the defendant." *Id.* Here, Plaintiff seeks only a retrospective declaration that Defendants violated his First and Fourteenth Amendment rights and federal statutes. *Compl.* [#1] at 21.[6] Accordingly, the Motions to Dismiss are **granted** as to Plaintiff's request for declaratory relief in its entirety.

The Court also finds that Plaintiff's claim based on the total suspension of religious ceremonies in specific common areas during the COVID-19 pandemic, asserted in claim five, is moot. As the CDOC Defendants highlight, Plaintiff requested the resumption of the use of faith grounds for personal group and religious ceremonies, as opposed to

---

[6] In addition, to the extent Plaintiff requests a declaration that he "should be free from persecution" (*id.*), this is a conclusory request that is insufficient to establish a real and concrete controversy necessary for the issuance of declaratory relief. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

conducting ceremonies in his own cell. *Compl.* [#1] at 17-19, 21. Defendants assert that Plaintiff received this relief because religious ceremonies resumed in May 2021 at BCCF. *CDOC Motion* [#23] at 5; *see also CDOC Reply* [#37] (stating that Defendant Williams instructed all facilities housing CDOC inmates (including BCCF) to resume religious ceremonies, which is within his authority as CDOC Executive Director) (citing Colo. Rev. Stat. § 17-1-103(1)(a.5)).

While Plaintiff takes issue with the manner in which religious ceremonies have resumed (see Response [#29] at 2, complaining that "[t]he religious calendar shows only one cell house is allowed to go once per month for an hour"), he does not dispute that such ceremonies have resumed. Because of the resumption of religious ceremonies, "there is nothing to be gained in the real world by continuing to litigate" the access to faith grounds claim. *AlAmiin v. Morton*, 528 Fed. Appx. 838, 842 (10th Cir. 2013) (finding a claim for halal-meals moot after prisoner was provided with halal meals); *see also Kansas Jud. Review v. Stout*, 562 F.3d 1240, 1245 (10th Cir. 2009) ("When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot."). While Plaintiff argues that "full restrictions could return at any time" due to a new COVID variant, this allegation is speculative and does not provide a basis to overcome mootness. *See Rio Grande Silvery Minnow*, 601 F.3d at 1117 ("A case 'ceases to be a live controversy if the possibility of recurrence of the challenged conduct is only a speculative contingency'") (quotation omitted). Accordingly, the Motions to Dismiss are **granted** as to this claim.[7]

---

[7] The Court further notes that even during times in which a pandemic did not impact policies such

**B.     Whether Plaintiff Has Pled Plausible Claims**

**1.     The Religious Claims under the First Amendment and RLUIPA**

The Court first addresses Plaintiff's claims asserted under the First Amendment Free Exercise Clause and RLUIPA.  As to the First Amendment, "[i]t is well-settled that "[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'"  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). Yet these protections are not without reasonable limitations.  *Id.*  To allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry.  *Id.*  "First, the prisoner-plaintiff must show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.'"  *Id.* (quotation omitted).  "A 'substantial burden' is one that: (1) significantly inhibits or constrains a plaintiff's religious conduct or expression, (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies the plaintiff reasonable opportunity to engage in fundamental religious activities."  *Mares v. LePage,* No. 16-cv-03082-RBJ-NYW, 2018 WL 1312814, at *3 (D. Colo. March 13, 2018) (quotations omitted).  In addition, Plaintiff "must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010).

---

as the restriction of religious ceremonies, the Tenth Circuit has held that a prisoner required to pray in his own cell did not show a substantial burden of his exercise of religion.  *See Tenison v. Boyd*, 826 Fed. Appx. 682, 690-91 (10th Cir. 2020) (holding that requiring a Muslim inmate to return to pray in his cell instead of in a common room with other inmates did not substantially burden his free exercise of religion under RLUIPA and the First Amendment).

"RLUIPA provides that 'no [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, unless the government shows that the burden furthers 'a compelling governmental interest' and does so by 'the least restrictive means.'" *Kay*, 500 F.3d at 1221 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).    RLUIPA first requires the Court "to ask whether an inmate's (1) religious exercise is (2) substantially burdened by prison policy. *Yellowbear v. Lampert*, 741 F.3d 48, 52 (10th Cir. 2014).    The Act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  *Kay*, 500 F.3d at 1221 (quoting 42 U.S.C. § 2000cc–5(7)(A) (internal quotation marks omitted).    The Tenth Circuit holds that "a burden on a religious exercise rises to the level of being 'substantial' when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief—for example, by presenting an illusory or Hobson's choice where the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise."  *Yellowbear*, 741 F.3d at 55.

If a substantial burden is shown under RLUIPA, "the burden of proof shifts to the government to show that the substantial burden results from a compelling governmental interest and that the government has employed the 'least restrictive' means of accomplishing its interest."  *Abdulhasseeb v Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010); *see Borzych v. Frank*, 439 f.3d 388, 390 (7th Cir. 2006) (holding that RLUIPA

"prohibits prisons that receive federal funding from substantially burdening an inmate's religious exercise unless the step in question is the 'least restrictive way to advance a compelling interest").  RLUIPA thus imposes duties on prison officials that exceed those imposed by the First Amendment.  *Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009).

### 1.  Claim One

The crux of Plaintiff's first claim is that Defendants unlawfully denied Plaintiff the right to possess personal religious items pursuant to "insensitive and inflexible policies".  *Compl.* [#1] at 7 (referencing "CDOC's policy AR-800-01" and "AR Form 800-01G (Allowable Personal Faith Property)").  Plaintiff avers that he is denied a ceremonial pipe as well as a personal hand drum, flute, and "Ribbon Shirt and Dance Bell."  *Id*. at 7-8.[8] According to Plaintiff, "[t]hese sacred objects are fundamental for personal ceremonies[,] and that "[t]o deny me the possession of sacred personal faith items is to deny my First Amendment right."  *Id* . at 8.  Plaintiff further avers that there are less restrictive means available other than outright denial.  *Id.*

As Defendants note, however, Plaintiff averred in the Complaint that he is allowed to utilize communal items for his religious practice, and only complains that he is not allowed to possess these items *personally*.  *Compl.* [#1] at 8 ¶ 5 (alleging that Plaintiff is being "forc[ed] to use communal objects").  Thus, Defendants assert, and the Court agrees, that Plaintiff is not presented with a situation in which he is not able to use the items to practice his religion at all.  He simply has to utilize the communal items.  A

---

[8]  While the Complaint [#1] appeared to be asserting a denial of tobacco as well, Plaintiff clarifies in his Response [#29] that he is not alleging such a denial.  *Id*. at 3.  Tobacco is provided at Plaintiff's expense.  *Id*. at 1.

substantial burden must place more than an inconvenience upon religious exercise under both RLUIPA and the First Amendment; the burden must be substantial and significantly interfere with a plaintiff's practice of religious beliefs. *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). As courts in other jurisdictions have held, the conduct complained of by Plaintiff is the very type of inconvenience or incidental effect that does not constitute a substantial burden under the First Amendment's or RLUIPA's protection. *See Burke v. N.D. Dep't of Corr. & Rehab.*, 620 F. Supp. 2d 1035, 1051-52 (D.N.D. 2009) (holding an inmate failed to show a substantial burden of his religious exercise under RLUIPA when the prison provided alternative substitute communal religious items for religious items the prison deemed safety hazards); *Aiello v. West*, 207 F. Supp. 3d 886, 898-900 (W.D. Wis. 2016) (holding that a Jewish inmate failed to show a substantial burden on his religious exercise based on denial of individual plates for the Seder meal when the prison made traditional Seder food items available through communal Seder plates).

Plaintiff avers, however, that the sacred objects "are fundamental for personal ceremonies[,]" that "ceremonies are the primary vehicle of my way of life and expression[,]" and that "[t]hese sacred objects are the center and only way in spiritual practice." *Compl.* [#1] at 7 ¶ 5. Plaintiff further avers that "forcing me to use communal objects is a failure to recognize faith, rites, and practices of all Native Peoples." *Id.* While Plaintiff alleges how the sacred items are important to his religion, Plaintiff fails to allege why the exercise of his religion is substantially burdened when he can use them only in a communal setting, not a personal setting. *See Adkins v. Kaspar*, 393 F.3d 559, 570 (5th

- 10 -

Cir. 2004) (holding a restriction is a substantial burden "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.").

Perhaps the closest Plaintiff comes to alleging how the denial of the faith items is a substantial burden on his religious beliefs is his allegation that "[t]he denial of a personal Pipe forces me to assimilate to another tribes [sic] rites and ceremonies" *Compl.* [#1] at 8 ¶ 4. However, Plaintiff fails to allege how the denial of a personal pipe forces him to assimilate to another tribe's rites or ceremonies, or why he cannot practice his own religion when he uses the ceremonial pipe. Thus, he does not plausibly aver facts, for example, that the use of a ceremonial pipe in a communal setting requires him to modify his religious behavior and violate his religious beliefs, *Adkins*, 393 F.3d at 570, or how it "places considerable pressure on the plaintiff to violate a sincerely held religious belief." *Yellowbear*, 741 F.3d at 55. Further, Plaintiff does not plead facts from which the Court can infer that the communal use of the items significantly inhibits or constrains Plaintiff's religious conduct or expression, or meaningfully curtails Plaintiff's ability to express adherence to his faith. *Mares,* 2018 WL 1312814, at *3. Accordingly, the First Amendment and RLIPUA claims asserted in Claim One must be dismissed as insufficient to state a claim. *See id.* (holding that conclusory allegations that the inmate was wrongfully denied items in violation of his religious beliefs alone failed to sufficiently allege that such denials substantially burdened his ability to practice his religion in violation of the First Amendment); *Nichols v. Fed. Bureau of Prisons*, No. 09-cv-00558-CMA-CBS, 2010 WL 3219998, at *9-10 (D. Colo. Aug. 12, 2010) (dismissing pro se prisoner's Free Exercise claim for failure to plead a "substantial burden" where prisoner failed to assert

that his dietary requests were "integral" to his religious practice or that he would face the "Hobson choice" to either not eat or violate his religion by eating non-conforming foods).

Plaintiff does, however, include several new facts in his Response [#29], stating that the denial of the faith items to him personally means that he "is forced to hold the communal Pipe in a certain manner, sing certain songs in the Lakota language, face certain directions while praying and say certain prayers, like addressing the Lakota creator rather than the Sac and Fox creator in accord with Lakota rites." *Id* . at 2. These new allegations are not, however, properly considered in connection with the Motions to Dismiss. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that "it is well-established . . . that in determining whether to grant a motion to dismiss, the district court [is] . . . limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint"). Moreover, these facts still fail to show how the lack of personal faith items substantially burdens the exercise of *his* Native American religion.

The Court also finds that the First Amendment free exercise claim is subject to dismissal because Plaintiff did not aver "facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee*, 627 F.3d at 1188. Plaintiff notes that the explanation for the denial of the items at issue is AR Form 800-016, which states that this type of personal faith property "cannot be accommodated due to . . . property, space and security guidelines." *Compl.* [#1] at 7 Plaintiff fails to aver, however, how this is not rationally related to legitimate penological interests. *See Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2003).[9]

---

[9]  In fact, Plaintiff is asserting that he "is not raising a penological interest claim under the Free

Based on the foregoing, the Court **grants** the Motions to Dismiss as to the First Amendment free exercise and RLUIPA claims in Claim One. However, the Court dismisses this claim **without prejudice**. *See Garcia v. Webster*, No. 09-cv-03024-CMA-KLM, 2011 WL 109076, at *1 (D. Colo. Jan. 11, 2011) ("dismissal [with prejudice] of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.") (citing *Oxendine v. Kaplan*, 241 F.2d 1272, 1275 (10th Cir. 2001)).  To the extent that Plaintiff believes he can plead facts to cure the deficiencies noted by the Court and demonstrate a plausible claim as to this or other claims that are dismissed without prejudice, Plaintiff may file a motion to amend the complaint. [10.]

### 2. Claim Two

In Claim Two Plaintiff alleges that the Governor and other Defendants "are responsible for the theft of Federal funds provided to the State of Colorado for religious services within corrections." *Compl.* [#1] at 9.  Such action allegedly forces Plaintiff "to either pay for materials need for religious ceremonies or do without, which violates

---

Exercise Claus but a least restrictive means claim under RLUIPA." *Response* [#29] at 6.

[10] To the extent Claim One also relies on 18 U.S.C. § 1996 as the basis for a claim, the Court finds that statute does not provide a private cause of action.  42 U.S.C. § 1996 states that "it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian."  This statute is part of the American Indian Religious Freedom Act, which "is simply a policy statement and does not create a cause of action or any judicially enforceable individual rights." *Mitchell v. United States*, 502 F.3d 931, 949 (9th Cir. 2007) (quoting *Henderson v. Terhune*, 379 F.3d 709, 711 (9th Cir. 2004)).  The Court further notes that § 1996 states no enforceable proscription that would pertain to Plaintiff's factual allegations regarding Defendants' alleged denial of personal faith items, or any of the other alleged constitutional and statutory violations in the Complaint [#1].  Accordingly, this portion of Claim One is **dismissed with prejudice**.

[Plaintiff's] most basic right to practice my faith" in violation of the Free Exercise Clause and RLIUPA. *Id.* Plaintiff refers to his need to purchase firewood and herbs for his religion which he does not have funds for, and states that he was told that the CDOC was not responsible for the financial procurement of faith-based property. *Id*.

The Court finds that this claim must be dismissed. Under the First Amendment and RLUIPA, "prison officials do not have an affirmative duty to provide free religious materials or other articles to inmates." *Rea v. Colorado Dep't of Corrs.*, No. 09-CV-03014-REB-CBS, 2010 WL 5575163, at *6 (D. Colo. Dec. 7, 2010), *report and recommendation adopted*, No. 09-CV-03014-REB-CBS, 2011 WL 110917 (D. Colo. Jan. 13, 2011). Inmates, therefore, "have no right to force the CDOC to purchase additional materials for their personal religious use." *Id.*; *see also Pfeil v. Lampert*, 603 Fed. Appx. 665, 670 (10th Cir. 2015) (holding that even under the stricter obligations imposed by RLUIPA, the State is "not require[d] ... to pay for an inmate's devotional accessories."). Mandating state purchase of Plaintiff's religious items would improperly require Defendants to essentially subsidize Plaintiff's religious exercise. *See Abdulhaseeb*, 600 F.3d at 1320 ("RLUIPA requires governments to refrain from substantially burdening religion, not to affirmatively subsidize religion."). Moreover, Plaintiff's assertion that he should be entitled to free firewood and herbs for religious ceremonies under the Free Exercise Clause and RLUIPA has been explicitly rejected in this jurisdiction before. *See Rea*, 2010 WL 5575163, at *6; *see also Grady v. Holmes*, No. 07-cv-02251-EWN-CBS, 2008 WL 3539274, at *4-5 (D. Colo. Aug. 12, 2008).

In his Response [#29], Plaintiff states that his claim is also supported by Colo. Rev.

Stat. §17-42-102. *Id*. at 6. Section 17-42-102 states that "traditional religious and ceremonial practices of American Indians should be permitted in correctional facilities to the extent that such practices do not impinge on the reasonable security interests of the correctional facilities to which such Indians are confined." *Id*. This argument is rejected. First, that statute cannot serve as the predicate for Plaintiff's First Amendment free exercise claim because it is well established that a plaintiff cannot state a § 1983 claim for violation of a state statute. *See Rea*, 2010 WL 5575163, at *3-4 (holding this principle applied to C.R.S. § 17-42-102). Second, nothing within § 17-42-102 indicates that the statute provides a private right of action, and Plaintiff has not shown how it requires CDOC Defendants to affirmatively pay for firewood for Plaintiff's religious ceremonies.

Based on the foregoing, the Motions to Dismiss are **granted** as to the RLUIPA and free exercise claims asserted in Claim Two. These claims are **dismissed with prejudice**, as the Court finds it would be futile to allow Plaintiff to amend these claims. [11]

Finally in Claim Two, it appears that Plaintiff asserts a claim for religious discrimination in connection with disparities in treatment. *See Compl.* [#1] at 10 ¶ 5 ("No other Judeo-Christian religions pay to participate in a service" and this is "religious persecution."). To state a claim for religious discrimination in violation of the First Amendment, a plaintiff must plead "that the defendant acted with discriminatory

---

[11] To the extent Claim Two asserts a claim under 18 U.S.C. § 666(a)(A)(i), a criminal statute applying to acts of theft or embezzlement of property by a federal or state agency, this claim is also **dismissed with prejudice**. There is no private cause of action under such a statute. *See Conquest v. WMC Mortgage Corp.*, 247 F. Supp. 3d 618, 647 (E.D. Penn. 2017) ("[A] criminal statute of general applicability does not create a private right of action."); *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) ("Federal criminal statutes do not provide private rights of action.").

purpose[,]" which "'requires more than intent as volition or intent as awareness of consequences.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (quotation omitted). "It instead involves a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Id.* at 676–77 (citation omitted; alteration in original). Similarly, to state a discrimination claim under RLUIPA, Plaintiff must make allegations of discriminatory intent. *See* 42 U.S.C. § 2000cc(b)(2); *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 198 (2d Cir. 2014).

Here, Plaintiff fails to allege a plausible religious discrimination claim in Claim Two or any other claim. Even construing the allegations in the light most favorable to Plaintiff, Plaintiff does not aver any facts from which the Court can infer discriminatory intent. Thus, Plaintiff has alleged no facts that a decisionmaker required Plaintiff or other Native Americans to pay for their firewood and herbs because of, not in spite of, the Native American religion. *Iqbal*, 556 U.S. at 676. Further, Plaintiff failed to "plead sufficient factual matter to show that [Defendants] adopted and implemented the . . . policies at issue not for a neutral . . . reason but for the purpose of discriminating on account of race, religion, or national origin." *Id.* In fact, Plaintiff avers that he was told the basis for the requirement that he pay for firewood and herbs is because CDOC is "not responsible for the financial procurement of faith-based property" (Complaint [#1] at 9 ¶ 1), which would appear to be a neutral, nondiscriminatory reason. Accordingly, the Motions to Dismiss are also granted as to this portion of Claim Two, and it is **dismissed without prejudice**.

### 3. Claim Three

Plaintiff alleges in Claim Three that he was denied "the right to spiritually cleanse [his] cell or embellish any objects like a headband or medicine bag with stones or beadwork[,]" and that this "corrupt[ed] [his] spiritual identity and value systems."  *Compl.* [#1] at 10.  "To outright deny" Plaintiff's request to do these activities when there are "least restrictive means available" allegedly forces Plaintiff "to separate my faith and culture which is indispensable and non-negotiable."  *Id.*at 11 ¶ 4.  However, as Defendants note, the denial at issue appears to be based on a single occasion when the CDOC Defendants denied his request to spiritually cleanse his cell and to embellish objects.  *See id.* at 10 ¶ 1 (stating that this request was denied "[o]n 7-20-20").

Even assuming, for the sake of argument, that Plaintiff's exercise of religion was infringed upon during this singular occasion, the Court agrees with Defendants that such allegations are insufficient to state a plausible claim under either the First Amendment or RLUIPA.  The Tenth Circuit has consistently held that allegations of a "single, isolated incident" in which an inmate's religious exercise may have been infringed upon are insufficient to establish a substantial burden under the First Amendment.  *See Watkins v. Donnelly*, 551 Fed. Appx. 953, 960 (10th Cir. 2014) (affirming dismissal of free exercise claim in which the inmate alleged the prison denied his religious meals three times in one day, reasoning that the prisoner's allegations consisted merely of a *de minimis* burden on his free exercise rights); *Strope v. Cummings*, 381 Fed. Appx. 878, 882-83 (10th Cir. 2010) (holding isolated mistakes that caused the prisoner to miss three consecutive nights of religious services were not actionable under the Free Exercise Clause).

Further, a single past incident of an alleged interference with a religious exercise does not establish an on-going substantial burden sufficient to give rise to a RLUIPA claim for prospective injunctive relief or for declaratory judgment.  *See Pfeil*, 603 Fed. Appx. at 668; *Harris v. Avant*, No. 10-cv-00027-PAB-CBS, 2012 WL 1079318, at *2 (D. Colo. Mar. 29, 2012) (holding that a plaintiff's half-day of work on the Sabbath on one occasion failed to support prospective injunctive relief and dismissing the plaintiff's claim under RLUIPA); *see also McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996) ("[P]ast exposure to alleged illegal conduct does not establish a present live controversy if unaccompanied by any continuing present effects."); *cf. Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1232 (10th Cir. 2010) (holding that the plaintiff must demonstrate facts indicating an ongoing violation of federal law that would support prospective injunctive relief).  As a substantial burden is necessary to state a claim under these theories, Plaintiff's First Amendment and RLUIPA claims in Claim Three based on the denial to spiritually cleanse his cell and to embellish objects must be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff argues, however, that CDOC policy prevents him from spiritually cleansing his cell and to embellish objects, and therefore it would not matter how many times he requested to do these things.  *Response* [#29] at 1.  However, Plaintiff did not allege that in the Complaint [#1]; instead, he averred that on one occasion in July 2020, Defendant Kelso stated that the CDOC was "unable to accommodate every request for practices that fall outside of those required by faith tenet."  *Compl.* [#1] at 11 ¶ 2.  Again, the Court

is limited to considering the four corners of the complaint in determining the merits of the Motions to Dismiss.  Jojola, 55 F.3d at 494.

Based on the foregoing, the Court **grants** the Motions to Dismiss as to the RLUIPA and First Amendment claims in Claim Three.  However, as the Court cannot say that amendment would be futile, these claims are **dismissed without prejudice**.

### 4.    Claim Four

Plaintiff asserts several claims in Claim Four.  First, Plaintiff avers that he had made personal fund contributions so that he could "participate in ceremonies like Sweat and Pipe[,]" and that he needs firewood for the ceremonies.  *Compl.* [#1] at 12 ¶ 1A. According to Plaintiff, after he purchased firewood the ceremonies were denied to him because the wood he "purchased was stolen or given to the Asatru and Wiccan faiths." *Id.*  Plaintiff further avers that he has twice submitted a proposal for the firewood he purchases to be placed in a separate area so it is not used by other faiths or "stolen by staff[,]" and that his "purchased faith materials" have not been protected from being taken and used by staff or other faiths at Plaintiff's expense.  *Id .*  In addition, Plaintiff asserts that he has been unable to purchase quality firewood because Defendants require him to purchase firewood from one preapproved vendor who charges high prices and supplies "old scrap wood[,"] and have denied his request to provide him information as to other vendors for wood.  Finally, Plaintiff asserts that he has not been able to get an accounting regarding how much of his money has been spent and on which items (*i.e.,* firewood or herbs).  *Id.* ¶¶ 1B. and 1C.[12]

---

[12]  This last allegation is not tied in any way to Plaintiff's religion, as Plaintiff has not  alleged that

To the extent that Plaintiff claims he is substantially burdened by the quality of firewood provided by the approved vendor, this does not show a substantial burden on the exercise of Plaintiff's religion or his religious beliefs.  Plaintiff does not allege, for example, that the vendor's firewood did not burn or that he was otherwise unable to use the firewood for ceremonies like Sweat and Pipe.

As to the claim that Defendants have failed to protect his firewood from theft or use by other religions, Plaintiff fails to state how many times this allegedly occurred and whether this has been a continuous or sporadic diversion.  Similarly, while Plaintiff claims he has been denied ceremonies because the wood was not available, he does not state how many times this occurred, or aver that he has been entirely deprived of the ability to go to ceremonies because of this issue.  When an alleged deprivation is "the result of a sporadic or isolated incident," it merely constitutes an "inconvenience" that is not sufficient to show a substantial burden.  *Strope v. Cummings,* 381 Fed. Appx. 878, 882 (10th Cir. 2010) (quoting *Abdulhaseeb*, 600 F.3d at 1316, and noting that case illustrated the distinction between substantial burden and inconvenience where the court held that "the flat denial of a halal diet with approved meats was actionable but that sporadic incidents in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable").

Moreover, Plaintiff does not allege that Defendants intentionally took any action that deprived Plaintiff of the firewood; instead, he alleges that Defendants failed to protect

---

the failure to obtain an accounting substantially burdens his sincerely-held religious beliefs or the exercise of his religion.  This portion of Plaintiff's allegations thus fails to state a claim under either the free exercise clause or RULUIPA.

the firewood. "The substantial burden must be a result of a defendant's 'intentional interference' with the plaintiff's free exercise rights to state a valid claim under § 1983'— negligence is not sufficient." *Slater v. Teague*, No. 17–cv–02084–PAB–STV, 2018 WL 1800919, at *3 (D. Colo. March 21, 2018) (quoting *Gallagher*, 587 F.3d at 1070); *see also McLeod v. Williams*, No. 18-CV-115 (RA), 2020 WL 2512164, at *6 (S.D.N.Y. May 15, 2020) (stating that "[a] prison official must *knowingly* place a substantial burden on a prisoner's religious beliefs to incur liability for damages under RLUIPA or the Constitution[,]'", and that "damages claims based solely on the negligent infringement of a prisoner's right to religious freedom are not actionable under either the First Amendment or RLUIPA'") (quotation and internal quotation marks omitted).

Plaintiff also alleges in Claim Four that "sacred objects are the cornerstone of my beliefs and practices[,]" and that "[s]taff at BDCCD do not consult with Elders or Medicine Men or Medicine Women to understand the significance of proper handling of such objects." *Compl.* [#1] at 14 ¶1.E. Plaintiff avers additionally that there is no training provided to staff so that they understand some objects are not to be touched if at all possible[,]" and that despite security reasons for searches of property, "the sanctity of my religious items should be honored in the same way one honors the sanctity of sacred objects in any house of worship." *Id*. At a meeting where he requested that sacred items should be visually inspected rather than manually inspected, Plaintiff avers that "Warden Roark basically laughed and told me they would search what they want, when they want, and they were not required to visually inspect and training would not be provided to the contrary." *Id*. This portion of Claim Four also must be dismissed for failure to state a

claim upon which relief can be granted as Plaintiff does not aver how the handling or treatment of sacred objects by the CDOC substantially burdens his religious beliefs or the exercise of his religion.  Further, Plaintiff does not allege **that the actions of which he complains were not reasonably related to legitimate penological interests.**  *Gee*, 627 F.3d at 1188.  **In fact, he acknowledges** the need for searches for security reasons (Complaint [#1] at 14 ¶1.E), and does not aver how the manner in which searches are conducted is not rationally related to the legitimate penological interest of security.

Finally, Plaintiff avers in Claim Four that he has been denied the right to acquire other faith-based items such as "new deer or elk antlers," willows and blankets for the structure of the Inipi, a tarp to cover the Inipi, and stones.  *Compl.* [#1] at 14 ¶ 1F.  Further, Plaintiff avers that he has been denied a spiritual leader, which makes it "increasingly difficult to practice my faith without oppression."  *Id.* ¶ 1G.  Again, this portion of Claim Four must be dismissed because Plaintiff does not aver that these items and a spiritual leader are integral to his religion or how his religious beliefs are substantially burdened by the lack of them.  *See Nichols*, 2010 WL 3219998, at *9-10 (dismissing pro se prisoner's free exercise claim for failure to plead a "substantial burden" where prisoner failed to assert that his dietary requests were integral to, or required for, his religious practice).

Based on the foregoing, the Motions to Dismiss are **granted** as to Claim Four, and these claims are **dismissed without prejudice** as the Court cannot say that an amendment would be futile.[13]

---

[13]  Plaintiff also asserts at the conclusion of Claim Four that he fears retaliation for filing the

5. **Claim Five**

The portion of Claim Five that seeks a resumption of Native American religious ceremonies in the common areas during the COVID-19 pandemic was dismissed as moot in Section III.A, *supra.* To the extent that Plaintiff asserts that his religious rights have been violated by not receiving publications or videos about his faith when these items are provided for other faiths, the Court finds that this claim fails because Plaintiff has not asserted why or how the lack of Native American faith-based videos and publications substantially burdens his faith. *See Nichols*, 2010 WL 3219998, at *9-10. Plaintiff also fails to state a plausible claim for religious discrimination because, similar to Claim Two discussed *supra*, Plaintiff makes no allegations from which discriminatory intent can plausibly be inferred.

Based on the foregoing, to the extent Claim Five has not been dismissed as moot, the Motions to Dismiss are **granted** as to the claims made under the First Amendment and RLUIPA. These claims are **dismissed without prejudice** as the Court cannot say

---

Complaint, as he said he was threatened with charges by Defendant Salazar if he continued to file grievances on behalf of the Native American community. *Compl.* [#1] at p. 16. Plaintiff further states he fears "harassment of my property and my faith or being transfered [sic] to a more confining facility." *Id.* Plaintiff has alleged merely an unsubstantiated fear of harassment. Plaintiff's harassment allegations are based on one comment by Salazar on August 5, 2020; however, Plaintiff does not allege he was subject to any adverse actions before or after Salazar's comment, and he is still housed at BCCF. Any retaliation or harassment concerns by Plaintiff are conclusory in nature, and do not show that Plaintiff is entitled to injunctive relief. *See Gilbert-Mitchell v. Gerlach,* 2017 WL 9478509, at *5 (W.D. Okla. Sept. 22, 2017) ("'To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical.'") (quoting *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) (internal quotations omitted). Further, as the BCCF Defendants highlight, Plaintiff remains in the custody of the Executive Director of the CDOC who has the sole authority to transfer Plaintiff to another correctional facility. *See* Colo. Rev. Stat. § 17-1-105(1)(a).

at this stage of the litigation that an amendment would be futile.

**B.    Equal Protection Claims**

Plaintiff asserts an equal protection violation in Claim Two because he is allegedly required to pay for "his most basic needs to practice my faith[,]" *i.e.* firewood and herbs needed for ceremonies, when other religions are not required to "pay to participate in a service." He further asserts that only "the Asatru, Wiccan, and Native American faiths are required to submit monies into the faith funds if they want to conduct a service but that "other Judeo-Christian religions" are not. *Compl.* [#1] ¶¶ 1-5. In Claim Five, Plaintiff alleges equal protection violations in that Judeo-Christian faiths and other programs were accommodated during COVID-19 restrictions so they could continue but that no effort was made to accommodate his "Native faith." *Id.* at 17 ¶ 1. Plaintiff also avers that religious videos are played on a regular basis for other religions, but that Chaplain Hestand refused to use funds to purchase videos on Native American culture and faith protections. *Id.* at 18 ¶ 3. Additionally, Plaintiff avers that the Chaplain's office has provided publications relevant to other faiths but not for his faith. *Id.* ¶ 4. Plaintiff asserts that he was not allowed to go to the faith grounds to conduct personal or group ceremonies, but inmates from different housing units were allowed to go to work and mingle. *Id.* ¶ 5. Finally, Plaintiff claims that he was denied other things such as his faith items, being able to burn sage and cedar in his cell, and a faith coordinator "while other faiths get prayer rugs, rosaries, bibles, gala beads, alters, publications, videos, and outside help." *Id.* at 19 ¶ 6. The Court finds that these claims are also subject to dismissal.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  Equal protection "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  To state an equal protection claim, the inmate "must establish that others, 'similarly situated in every material respect' were treated differently."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Jicarilla Apache Nation v. Rio Arriba County*, 440 F.3d 1202, 1210 (10th Cir. 2006)).

Here, Plaintiff simply alleges that his Native American faith was treated differently from Judeo-Christian faiths, or that other faiths were treated more favorably.  Plaintiff does not aver that other inmates who were similarly situated in every respect to Plaintiff were treated differently.  For example, Plaintiff does not allege that other inmates were allowed to utilize the faith grounds to conduct religious ceremonies, let alone that those inmates are similarly situated to him.  As the Tenth Circuit has held, "where the government actor enjoys a broader range of discretion, and may properly base a decision on a myriad of potentially relevant variables", as here in the prison setting, "it is more likely that there are 'material distinctions between allegedly similarly situated parties, leading to a ready supply of rational and not wholly arbitrary reasons for differential treatment."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1218 (10th Cir. 2018).  In that circumstance, "the plaintiff must account for a wide range of characteristics in identifying similarly situated individuals."  *Id.*  Plaintiff's conclusory allegations of equal protection violations,

without any allegations showing that similarly situated inmates were treated differently, are not sufficient to state a claim.  See *id*.[14]

Accordingly, the Motions to Dismiss are **granted** as to the equal protection claims and they are **dismissed without prejudice**.

### IIII. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the BCCF Defendants' Motion to Dismiss Plaintiff's Complaint [#22], the CDOC Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure [#23], and the Governor's Rule 12(b)(1) and (6) Motion to Dismiss [#45] are **GRANTED** consistent with this Order.  In accordance therewith,

IT IS **ORDERED** that Plaintiff's request for declaratory relief, that seeks retrospective relief only, is **DISMISSED AS MOOT**.

IT IS FURTHER **ORDERED** that the portion of Claim Five that seeks injunctive relief in regard to lifting COVID restrictions and resuming faith ceremonies is **DISMISSED AS MOOT** because such restrictions have been lifted.

IT IS FURTHER **ORDERED** that the First Amendment and RLUIPA claims in Claim Ones, Three, Four, and Five (to the extent Claim Five asserts claims that were not dismissed as moot) are **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER **ORDERED** that the portion of Claim One that seeks relief under

---

[14]  Moreover, to the extent that Plaintiff may be attempting to assert an equal protection claim with respect to a group, *i.e.,* inmates who are of Native American faith, he fails to allege facts from which the Court could plausibly infer discriminatory intent.  *See Asaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021).

18 U.S.C. § 1996 is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER **ORDERED** that the First Amendment free exercise and RLUIPA claims in Claim Two as well as the claims under 18 U.S.C. § 666 and Colo. Rev. Stat. §17-42-102 are **DISMISSED WITH PREJUDICE.**

IT IS FURTHER **ORDERED** that Plaintiff's equal protection claims are **DISMISSED WITHOUT PREJUDICE.**[15]

IT IS FURTHER **ORDERED** that if Plaintiff wishes to file an amended complaint in an attempt to cure the deficiencies noted in claims that were dismissed without prejudice, this complaint shall be filed by **April 5, 2022.**

Dated: March 15, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

---

[15] Since the Court has found that dismissal of all claims is warranted on the grounds articulated in this Order, it need not address other arguments made in support of the Motions to Dismiss.