IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

    Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI,
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND, and
STEVEN SALAZAR,

    Defendants.

---

### BCCF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

Defendants Jerry Roark, David Hestand, Steven Salazar, Clara Casebolt, Larry Cox, Justin Arrasmith, Derick Dockter, Luke Holland, Tiffany Saldana, and Colin Carson (collectively, "BCCF Defendants"), via counsel, Andrew D. Ringel, Esq., Edmund M. Kennedy, Esq., and Katherine N. Hoffman, Esq. of Hall & Evans, L.L.C., pursuant to Fed. R. Civ. P. 12(b)(1) and (6), submit this Motion to Dismiss Plaintiff's Amended Complaint [ECF 66], as follows:

**D.C.COLO.LCivR 7.1:** In accordance with D.C.COLO.LCivR 7.1(b)(1), because Plaintiff is an unrepresented prisoner, undersigned counsel was not required to confer with Plaintiff before filing this Motion.

## INTRODUCTION

This action stems from Plaintiff Rodney Douglas Eaves' ("Plaintiff") incarceration by the Colorado Department of Corrections ("CDOC"). During the timeframe relevant to his Amended Complaint, Plaintiff was housed at the Bent County Correctional Facility ("BCCF"), a private prison operated pursuant to a contract with the CDOC. Plaintiff is a member of a Native American religion. Plaintiff alleges several CDOC and BCCF employees engaged in practices pursuant to CDOC policy which Plaintiff alleges have substantially burdened his ability to practice his religion.

Plaintiff initially brought claims against BCCF Defendants Warden Jerry Roark, Chaplain David Hestand, and Programs Coordinator Steven Salazar. Plaintiff's Amended Complaint adds claims against Clara Casebolt, Chaplain's Assistant, Larry Cox, Chief of Security, Justin Arrasmith, Hearings Officer, Derick Dockter, Hearings Officer, Luke Holland Unit Manager, Tiffany Saldana, Administrative Clerk, and Colin Carson, Assistant Warden. Plaintiff's claims arise under the First Amendment Free Exercise Clause and the Fourteenth Amendment Equal Protection Clause pursuant to 42 U.S.C. § 1983. Plaintiff sues BCCF Defendants in their individual and official capacities. However, BCCF Defendants cannot be sued in their official capacities because they do not have official capacities under 42 U.S.C. § 1983 as private prison employees. Additionally, BCCF Defendants are not necessary parties to the Amended Complaint because Plaintiff's requested relief can be achieved through other Defendants. Plaintiff's claims also fail for lack of personal participation, and several fail to plausibly plead constitutional violations. Finally, Plaintiff's retaliation claim is barred because it attempts to attack valid Code of

Penal Discipline ("COPD") convictions that have not been overturned. Accordingly, dismissal of the claims against BCCF Defendants is required as a matter of law.

## SUMMARY OF CASE

Plaintiff is a CDOC prisoner housed at BCCF. BCCF is operated by CoreCivic, which is "a private, for-profit, business corporation, listed on the New York Stock Exchange, in the business of, among other things, the private management of prisons and other correctional facilities under contract with" the State of Colorado, among other municipal entities. **Phillips v. Tiona**, 508 Fed. Appx. 727, 750-51 (10th Cir. Jan. 23, 2013)[1] (discussing CoreCivic's prior name Corrections Corporation of America ("CCA")). "The State of Colorado contracts with CoreCivic pursuant to state statute authorizing the CDOC 'to permanently place state inmates classified as medium custody and below in private prisons,' Colo. Rev. Stat. § 17-1-104.9, subject to legislation comprehensively regulating such prisons." **Id.** The State of Colorado requires private prisons to, among other things, "abide by operations standards for correctional facilities adopted by the executive director of the department of corrections." C.R.S. § 17-1-202(1)(e). "Notably, inmates assigned to private prisons remain officially in the custody of the CDOC[.]" **Phillips,** 508 Fed. Appx. at 751. Although BCCF privately-runs the correctional facility, CDOC remains intimately involved. For instance, the duties of the CDOC Executive Director specifically include the authority to "monitor and supervise the activities of private contract prisons." C.R.S. §17-1-103(a).

---

[1] All unpublished decisions have been attached as Exhibit A and provided to the Plaintiff pursuant to D.C.Colo.LCiv.R. 7.1(e).

In his Amended Complaint, Plaintiff alleges several instances where he claims his religious practices were substantially burdened by CDOC and BCCF employees, while admitting all of the BCCF employees relied on CDOC regulations for the denial of Plaintiff's various requests. Plaintiff alleges he was denied through procedures set forth in CDOC policies the right to possess certain personal religious items and the right to perform certain religious ceremonies.

Prior to the filing of his Amended Complaint, this Court issued an Order granting all Defendants' Motions to Dismiss, with some claims dismissed with prejudice and others dismissed without prejudice. [ECF 55]. Plaintiff has realleged all the claims dismissed without prejudice, as well as asserting a new claim for retaliation against BCCF Defendants. All previous claims fail for the same reasons as set forth in the Order dated March 15, 2022. [*Id.*].

As discussed below, Plaintiff's claims in his Amended Complaint fail for basically the same reasons as his original Complaint. Additionally, the retaliation claim is precluded because the claim directly challenges Plaintiff's COPD convictions and any determination by this Court that his COPD charges were retaliatory would invalidate those convictions. Accordingly, BCCF Defendants respectfully request this Court again dismiss all the claims against them in their entirety with prejudice.

## **ARGUMENT**

**A. Plaintiff's Official Capacity Claims Against BCCF Defendants Must Be Dismissed Because BCCF Defendants Have No Official Capacity Under 42 U.S.C. § 1983 as Private Prison Employees.**

Plaintiff brings claims against BCCF Defendants in their official capacities. [ECF 66 at 3-6 (Defendants 7 through 17)]. However, BCCF Defendants cannot be sued in

their official capacities because they have no official capacities under 42 U.S.C. § 1983; they are employees of a private prison, not state employees. *See **Jones v. Barry***, 33 F. App'x 967, 971, n.5 (10th Cir. 2002) ("the CCA defendants are not state actors, and they do not have an "official capacity."); ***Alamiin v. Patton***, 2016 U.S. Dist. LEXIS 172044, at *6 (W.D. Okla. Dec. 13, 2016) ("As employees of a private prison, they are not state officials, and official capacity claims cannot be asserted against them."); ***Williams v. Hininger***, 2019 U.S. Dist. LEXIS 98681, at *4-5 (W.D. Okla. May 14, 2019) (dismissing official capacity claims against employees of a private prison facility owned and operated by CoreCivic). Because BCCF Defendants are employees of a private prison, official capacity claims cannot be asserted against them, necessitating dismissal of all official capacity claims against BCCF Defendants.

### B.   BCCF Defendants Are Not Necessary Parties to This Lawsuit Because Plaintiff Can Achieve the Requested Relief from Other Defendants.

In his Amended Complaint, Plaintiff requests mandatory injunctive relief against both CDOC and BCCF Defendants. Because of the relationship between CDOC and BCCF, the Court can grant the complete injunctive relief requested by Plaintiff against CDOC Defendants, without the BCCF Defendants' presence in this lawsuit and, as such, the claims against BCCF Defendants are wholly unnecessary. [*See, e.g.*, ECF 66 at 8, ¶ 8, (Claim One asserts State Defendants, including CDOC employees, denied his request along with BCCF Defendants, based on CDOC policies, thus violating his rights); *id.* at 15-16, ¶¶ 81, 86, 90, 96, and 99 (Claim Two asserts State regulations, statutes, and employees, including CDOC employees, denied his request along with BCCF Defendants, based on CDOC policies, thus violating his rights); *id.* at 17-19, ¶¶ 106, 107,

108, & 125 (Claim Three asserts State employees, including CDOC employees, denied his request along with BCCF Defendants, based on CDOC policies, thus violating his rights); *id.* at 19-20, ¶ 131 (Claim Four alleges CDOC policies created a "loophole" that allows the violation of Plaintiff's rights); *id.* at 20—21, ¶ 139 (Claim Five asserts a BCCF employee stole money donated by Plaintiff while also admitting CDOC regulations do not allow inmates to claim money donated as their own but are part of a common fund to be used for various reasons); *id.* at 21, ¶ 152 (Claim Six alleges the enforcement of CDOC policy by various CDOC and BCCF staff violate Plaintiff's rights).

The conduct Plaintiff seeks to enjoin are the policies of CDOC, not BCCF. If BCCF is directed by CDOC to provide Plaintiff with certain personal religious items pursuant to any order from this Court to CDOC officials, they will do so. Conversely, if BCCF Defendants are directed by CDOC to deny Plaintiff the right to possess certain religious items, they will not. This applies to any requests Plaintiff seeks this Court to order. BCCF Defendants do not have the authority to augment CDOC policy absent CDOC approval or Court order. As such, any injunctive relief ordered by this Court need only be against the entity who promulgated the policies at issue, not the contracted party who merely enforces these policies per contract and statute at BCCF. *See* **Quality Jeep Chrysler, Inc. v. Chrysler Group, LLC**, 2010 U.S. Dist. LEXIS 145005, at *13-14 (D. New Mexico March 22, 2011) (dismissing defendant who was not a necessary party from declaratory judgment claim because court could afford complete relief in that defendant's absence); **Discover Prop. & Cas. Ins. Co. v. Collective Brands, Inc.**, 2008 U.S. Dist. LEXIS 54705, at *23-34 (D. Kansas July 15, 2008) (*citing* **Salt Lake Tribune Publishing Co. v.**

***AT&T***, 320 F.3d 1081 (10th Cir. 2003) (same)). Given Plaintiff has not made a claim for monetary damages, the absence of BCCF Defendants would not impede the Court from granting him the complete *injunctive* relief requested in his Amended Complaint. Consequently, BCCF Defendants are not necessary parties to this matter, and Plaintiff's claims against them should be dismissed.

### C. Plaintiff's Claims Fail for Lack of Personal Participation.

Plaintiff's claims against BCCF Defendants fail for lack of personal participation. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." ***Foote v. Spiegel***, 118 F.3d 1416, 1423 (10th Cir. 1997). The Tenth Circuit has repeatedly held in § 1983 actions, specific factual allegations regarding the elements of each claim are particularly important, because "state actors may only be held liable under § 1983 for their own acts." ***Davis v. CoreCivic, Inc.***, 2020 U.S. Dist. LEXIS 209076, *12-13 (E.D. Okla. November 9, 2020) (quoting ***Robbins v. Oklahoma***, 519 F.3d 1242, 1251 (10th Cir. 2008). "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." ***Robbins***, 519 F.3d at 1250 (citation omitted) (emphasis in original).

A defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. ***Ashcroft***, 556 U.S. at 676 (2009). While a defendant can be liable in a § 1983 action based on his or her supervisory responsibilities, this type of claim must be supported by allegations demonstrating

7

personal involvement, a causal connection to the constitutional violation, and a culpable state of mind. ***Schneider v. City of Grand Junction Police Dep't.,*** 717 F.3d 760, 767-69 (10th Cir. 2013).

Additionally, while inmates retain protections afforded by the First Amendment including its directive no law shall prohibit the free exercise of religion, these protections are not without reasonable limitations. ***Kay v. Bemis***, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting ***O'Lone v. Estate of Shabazz***, 482 U.S. 342, 348 (1987)). "The Supreme Court has cautioned that prison inmates are also subject to the 'necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.'" ***Id.*** Prison administrators, not the courts, should "make the difficult decisions concerning institutional operations…" ***Turner v. Safley***, 482 U.S. 78, 89 (1987); *see* ***Shaw v. Murphy***, 532 U.S. 223, 229-30 (2001) (quoting ***Pell v. Procunier***, 417 U.S. 817, 822 (1974)) (in the First Amendment context, "some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'").

To allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. ***Kay***, 500 F.3d at 1218. "First, the prisoner-plaintiff must first show that a prison regulation 'substantially burdened…sincerely-held religious beliefs.'" ***Id.*** (quoting ***Boles v. Neet***, 486 F.3d 1177, 1182 (10th Cir. 2007)). A "substantial burden" is one that: (1) significantly inhibits or constrains plaintiff's religious conduct or expression, (2) meaningfully curtails plaintiff's ability to express adherence to his faith, or (3) denies plaintiff reasonable opportunity to engage in fundamental religious activities.

8

***Vasquez v. Ley***, 1995 U.S. App. LEXIS 32707, at *7 (10th Cir. 1995) (citations omitted). "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct." ***Id.*** The burden then returns to the prisoner to show the articulated concerns were irrational. ***Id.*** at 1219 n.2.

1. Claim One

The crux of Plaintiff's first claim is that BCCF Defendants unlawfully denied Plaintiff the right to possess personal religious items pursuant to CDOC policy. [ECF 66 at 8, ¶¶ 8 & 9; at 13, ¶¶ 59, 63, 65, & 72 (alleging a number of CDOC employees, relying on CDOC's policy AR-800-01 and AR Form 800-01G (Allowable Personal Faith Property) "denied [Plaintiff's] request to possess personal sacred objects" and "without performing his required duties", "failed his duties"]. Plaintiff's claim relies entirely on conclusory allegations BCCF Defendants personally participated in this denial. In reality, however, BCCF Defendants were following instructions from CDOC employees and CDOC policies. Plaintiff does not specify how each BCCF Defendant violated Plaintiff's constitutional rights. While he references issues pertaining to grievances, he does not allege who denied any grievance or why any grievance was denied. Regardless, it is well-established the denial of a grievance is insufficient to establish liability under § 1983. ***Gallagher v. Shelton***, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted) ("a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by [a] plaintiff, does not establish personal participation under § 1983."). Ultimately, Plaintiff's claim against BCCF Defendants fails because it is based on the unlawful denial of his request to CDOC employees for personal faith items pursuant to CDOC policy. Plaintiff does not allege (nor could he) BCCF Defendants were involved in

the creation of CDOC policy or had the authority either to depart from or change the requirements and restrictions of CDOC policy. [ECF 66 at 8, ¶¶ 8 & 9; at 13, ¶¶ 59, 63, 65, & 72].

2. Claim Two

In his second claim, Plaintiff alleges BCCF Defendants violated his rights by refusing to pay for materials used in Plaintiff's religious services. [ECF 66 at 15, ¶ 80]. Again, personal participation is lacking here. Plaintiff fails to show any BCCF Defendant personally participated in this alleged constitutional violation for merely reciting a CDOC policy. Notably, Plaintiff does not allege any BCCF Defendant was involved in the creation of the CDOC policy at issue or had the authority to change this policy.

Additionally, Plaintiff's second claim fails to establish a constitutional violation, based on the free exercise clause by refusing to provide materials needed for religious ceremonies free of charge. This is insufficient to establish a plausible free exercise claim as "[p]risons do not have an affirmative duty to provide religious materials or other religious articles free of charge to inmates." *Hamlin v. Smith*, 2010 U.S. Dist. LEXIS 69205, at *21 (D. Colo. July 12, 2010) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005)). While BCCF is not permitted to substantially burden Plaintiff's religious beliefs, it is not required to affirmatively subsidize religion through the purchase of religious materials. *See Slater v. Teague*, 2018 U.S. Dist. LEXIS 63605, at *19 (D. Colo. 2018) ("Correctional facilities are not required to subsidize inmates' access to religious materials.").

3. Claim Three

Plaintiff's third claim does not appear to assert any allegations against BCCF Defendants pertaining to a violation of his rights by refusing to allow Plaintiff to spiritually cleanse his cell or embellish objects like headbands or medicine bags. [ECF 66, at 17-19, ¶¶ 105-126 (all allegations appear to be asserted against CDOC Defendants)]. In any event, based on the allegations in Plaintiff's Amended Complaint, it appears Plaintiff's claim is based on the denial of his request to amend CDOC policy, something BCCF Defendants cannot do. [*Id.* at 17, ¶ 105 (this claim centers around Plaintiff's request to amend AR 800-01)]. Plaintiff does not allege any BCCF Defendant was involved in the creation of this policy or had the authority to amend this policy. As such, Plaintiff has not shown any BCCF Defendant personally participated in this alleged violation.

4. Claim Four

Plaintiff acknowledges the issue in this claim is due to a "loophole" in CDOC policy concerning funds donated for the purpose of assisting Native Americans for the purchase of materials used in their respective rituals and his request to fix this "loophole" has not be accepted. [*Id.* at 19, ¶¶ 131, 134, & 135]. As with the claims discussed above, Plaintiff does not allege any BCCF Defendant was involved in the creation of this policy or had the authority to amend/change this policy. As such, Plaintiff has not shown any BCCF Defendant personally participated in this alleged violation.

Additionally, Plaintiff alleges BCCF Defendants violated the First Amendment Free Exercise Clause by failing to take proper steps to protect firewood purchased by donations from Plaintiff (as well as others) on behalf of the Native American faith group. Importantly, "isolated acts of negligence" are insufficient to establish a substantial burden,

11

***Gallagher***, 587 F.3d at 1070, and plaintiff must allege more than a mere inconvenience on his free exercise rights. ***Strope v. Cummings***, 381 F. App'x 878, 882 (10th Cir. 2010). When an alleged deprivation is "the result of a sporadic or isolated incident," it merely constitutes an "inconvenience." ***Slater***, 2018 U.S. Dist. LEXIS 63605, at *8-9 (citations omitted).

Even assuming Plaintiff's allegations are sufficient to establish a continuous deprivation, which BCCF Defendants dispute, Plaintiff has not shown BCCF Defendants' conduct amounted to more than mere negligence by failing to protect the firewood from theft by third parties. [ECF 66, at 20, ¶ 135 (allegations are that some unknown "staff or other faiths had taken firewood" which, again, is allowed by CDOC policy)]. Negligence is insufficient to state a claim under § 1983. ***Gallagher***, 587 F.3d at 1070. Moreover, Plaintiff has not alleged any of the BCCF Defendants were involved in the firewood thefts or that their policies or actions were intended to intentionally interfere with Plaintiff's firewood. *See* ***Slater***, 2018 U.S. Dist. LEXIS 63605, at *9 ("the substantial burden must be a result of a defendant's 'intentional interference' with the plaintiff's free exercise rights 'to state a valid claim under § 1983'—negligence is not sufficient.").

    5. <u>Claim Five</u>

Claim Five of Plaintiff's Amended Complaint alleges BCCF Defendants "embezzled" money donated by Plaintiff, "denying him the opportunity to participate in" his religious ceremonies. [*Id.* at 20, ¶ 138]. As with Plaintiff's other claims, the permitted uses of donated funds are set forth in a CDOC policy, as Plaintiff admits. [*Id.* ¶ 139]. Additionally, Plaintiff's bald assertion of embezzlement is speculative, conclusory, and

unsupported at best. As such, the Court must disregard it in ruling on this Motion to Dismiss. *Ashcroft*, 556 U.S. at 664.

Plaintiff further alleges BCCF Defendants violated the free exercise clause by purchasing firewood from one vendor who charged high prices and provided "kick-backs" to BCCF Defendants. [ECF 66 at 20, ¶ 140]. Plaintiff provides nothing but conclusory assertions related to his belief a "kick back" occurred. Although Plaintiff's preference, perhaps, is for firewood from a different vendor at a lower price, he does not allege facts showing his religious practices were substantially burdened by the quality of firewood or the price paid for such wood. Indeed, Plaintiff does not allege the firewood did not burn or he was otherwise unable to use the firewood for ceremonies other than the lack of firewood at times as discussed above. As such, Plaintiff has failed to show that this practice (1) significantly constrained his religious expression, (2) meaningfully curtailed his ability to express adherence to his faith, or (3) denied him a reasonable opportunity to engage in fundamental religious activities. *Vasquez*, 1995 U.S. App. LEXIS 32707, at *7.

6. Claim Six

Plaintiff's sixth claim alleges constitutional violations arising from restrictions issued in response to COVID-19. [ECF 66 at 21, ¶ 149 (timeframe of this claim is the time of COVID 19 restrictions)]. Plaintiff specifically attributes these policies to Governor Polis and CDOC employees and does not allege any of the BCCF Defendants were involved in the creation of these policies. [*Id.* ¶ 152 (Governor Polis and CDOC employees were the "policy enforcer, to enforce the [] lockdown."). As no BCCF

13

Defendant was involved in the policy decisions pertaining to COVID 19, Plaintiff has again failed to provide any basis to conclude BCCF Defendants personally participated in the alleged violations.

    7.    <u>Claim Seven</u>

The United States Supreme Court, in **Turner v. Safley**, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), made clear that it is not the role of the judiciary to scrutinize and interfere with the daily operations of a prison, and retaliation jurisprudence does not change this role.  Obviously, an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity.  Accordingly, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place."  **Smith v. Maschner**, 899 F.2d 940, 949-50 (10th Cir. 1990).  An inmate claiming retaliation must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." **Frazier v. Dubois**, 922 F.2d 560, 562 n. 1 (10th Cir. 1990).

The allegations in Plaintiff's seventh claim center on Plaintiff's perception that BCCF staff's actions were all taken in retaliation for his pursuit of this litigation, even though most of the staff involved with Plaintiff's Code of Penal Disciplinary ("COPD") actions were not Defendants in this action and no allegations suggest any of them actually knew about the lawsuit at the time they participated in the COPD proceedings.  The courts "have held that [p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights.  This principle applies even where the action taken in retaliation would be otherwise permissible." **Peterson v. Shanks**, 149

F.3d 1140, 1144 (10th Cir. 1998) (quotations and citation omitted; alteration in original). Nonetheless,

> an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity. Accordingly, a plaintiff must prove that 'but for' the retaliatory motive, the incidents to which he refers ... would not have taken place. An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.

*Id.* (quotations and citation omitted).

Plaintiff's claim of retaliation for the pursuit of this lawsuit is insufficient to state a cognizable claim. Plaintiff fails to show that, "but for" the alleged retaliatory motive, he would have been treated differently. *See* **Smith v. Maschner**, 899 F.2d 940, 949-50 (10th Cir. 1990). Plaintiff presents no allegations to support a reasonable inference that any BCCF Defendant's allegedly retaliatory motives were the "but for" cause of their actions. Plaintiff's litigation efforts have ranged over such a lengthy period, timing alone belies Plaintiff's conclusory and speculative claims of retaliation. As a matter of fact, Plaintiff fails to establish any link between any BCCF staff and the BCCF Defendants who are part of this suit.

Here, Plaintiff never links this alleged harassment with any inappropriate motivation on the part of any BCCF Defendant other than asserting in conclusory fashion that everyone, including staff who are not parties to this action, conspired to retaliate against him. Thus, Plaintiff's claim fails to allege any facts sufficient to support a claim of retaliation as a matter of law.

Specifically, Plaintiff alleges he received COPD charges as retaliation for this litigation. However, Plaintiff asserts allegations that would support the COPD guilty findings. [*See*, *e.g.*, ECF 66 at 24, ¶¶ 181-194 (Plaintiff admits through his allegations he was told restrictions were still in place at BCCF, was then ordered to return to his Unit, refused to obey this order which required a response team to be called resulting in COPD charges for disobeying an order and creating a facility disturbance)].

Additionally, Plaintiff's retaliation claim is also precluded because it directly challenges his COPD convictions as any determination by this Court his COPD charges were retaliatory would invalidate those convictions. The basis for granting dismissal of Plaintiff's retaliation claim is Plaintiff's claim is barred as implicating the validity of his prison disciplinary convictions, a finding that has never been invalidated. Plaintiff admits that he was charged and convicted of COPD violations and that such violations were upheld and, as of this date, are still valid convictions. [*Id.* at 26, ¶ 205, at 28, ¶¶ 218-221 (admitting all his convictions were not overturned on appeal and are still valid convictions)].

Plaintiff's seventh claim is prohibited because it directly challenges the legitimacy of his prison disciplinary convictions. In **Preiser v. Rodriguez**, 411 U.S. 475 (1973), the Supreme Court addressed whether a prisoner could bring a § 1983 claim challenging the removal of good time credits. The Court held 42 U.S.C. § 1983 was not an appropriate vehicle for such a challenge because good-time credits affect the length of a prisoner's sentence, and the exclusive federal remedy for challenging the length of a sentence is a habeas corpus action. *Id.* at 487.

Similarly, in **Heck v. Humphrey**, 512 U.S. 477 (1994), the Supreme Court held that a prisoner cannot bring a 42 U.S.C. § 1983 claim that implicates the validity of a criminal conviction in state court until the conviction has been invalidated. *See also* **Beck v. City of Muskogee Police Dept.**, 195 F.3d 553, 556-57 (10th Cir. 1999). Specifically, **Heck** held that:

> when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 487 (footnotes omitted). The Supreme Court explained requiring a plaintiff to establish as a threshold requirement that the challenged conviction or sentence was somehow invalidated would prevent convicted criminals from utilizing § 1983 as a vehicle for launching collateral attacks on criminal convictions.

In **Edwards v. Balisok**, 520 U.S. 641 (1997), the Court found the principles of **Heck** barred a prisoner from using § 1983 as a vehicle for challenging the legitimacy of his conviction for a prison disciplinary violation. Unless and until the prison disciplinary conviction was overturned, the Court held, the plaintiff could not seek monetary damages from any alleged procedural irregularities during the disciplinary proceedings.

Here, Plaintiff's retaliation claim directly challenges the basis of his COPD convictions. He claims the charges on which he was convicted were falsified and brought in retaliation for his filing of this suit. To prevail on this claim, Plaintiff must establish BCCF Defendants, along with numerous BCCF staff not a party to this action, trumped up charges against him in connection with his disciplinary convictions. Therefore, for a

jury to find for Plaintiff, it would have to conclude Plaintiff did not violate the COPD but was set up by BCCF Defendants, and other BCCF staff, as retaliation for Plaintiff's filing of this suit. Such a finding would necessarily call into question Plaintiff's disciplinary convictions, which have not been invalidated.

For these reasons, Plaintiff's seventh claim implicates the validity of his disciplinary conviction. Therefore, his claim is barred pursuant to *Heck* and *Edwards*. For this additional reason, this Court must dismiss Plaintiff's seventh claim as a matter of law.

## II. CONCLUSION

WHEREFORE, for the reasons set forth above, as well as based on the analysis contained in this Court's Order dated March 15, 2022, BCCF Defendants Jerry Roark, David Hestand, Steven Salazar, Clara Casebolt, Larry Cox, Justin Arrasmith, Derick Dockter, Luke Holland, Tiffany Saldana, and Colin Carson respectfully request the Court dismiss Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6) and provide any further relief the Court deems just and necessary.

Dated this 13th day of June, 2022.

Respectfully submitted,

*s/ Edmund M. Kennedy*
Edmund M. Kennedy, Esq.
Katherine N. Hoffman, Esq.
Andrew D. Ringel, Esq.
Hall & Evans, L.L.C.
1001 17th Street, Suite 300
Denver, Colorado 80202
Tel: (303) 628-3300
Fax: (303) 628-3368
Email: ringela@hallevans.com
kennedye@hallevans.com
hoffmank@hallevans.com

18

                **ATTORNEYS FOR DEFENDANTS JERRY ROARK, DAVID HESTAND, STEVEN SALAZAR, CLARA CASEBOLT, LARRY COX, JUSTIN ARRASMITH, DERICK DOCKTER, LUKE HOLLAND, TIFFANY SALDANA AND COLIN CARSON**

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 13th day of June 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

**Philip T. Barrett, Esq.**
Colorado Attorney General's Office
Philip.barrett@coag.gov

and hereby certify that I have mailed the document to the following non-CM/ECF participant via U.S. mail:

**Rodney Douglas Eaves, #173190**
Bent County Correctional Facility (BCCF)
11560 Road FF75
Las Animas, CO 81054-9573

*s/ Erica Cameron,* Legal Assistant to
Hall & Evans, L.L.C.