IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01269-KLM

RODNEY DOUGLAS EAVES,

      Plaintiff,

v.

JARED POLIS,
DEAN WILLIAMS,
TRAVIS TRANI, in his individual capacity,[1]
GYPSY KELSO,
ANTHONY A. DECESARO,
MARSHALL GRIFFITH,
JERRY ROARK,
DAVID HESTAND,
JASON SMITH,
STEVEN SALAZAR,
CLARA CASEBOLT,
LARRY COX,
JUSTIN ARRASMITH,
DERICK DOCKTER,
LUKE HOLLAND,
TIFFANY SALDANA,
COLIN CARSON, and
DONNY BRITTON, and
ANDRE STANCIL, in his official capacity,

      Defendants.

_____

**ORDER ON MOTIONS TO DISMISS**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter comes before the Court on three motions: (1) **The Governor's Rule**

_____

[1] Pursuant to Fed. R. Civ. P. 25(d), Andre Stancil has been automatically inserted as a defendant in his official capacity as the current Deputy Director of CDOC.  Travis Trani is no longer a CDOC employee and therefore remains in this case in his individual capacity only.

**12(b)(1) and (6) Motion to Dismiss** [#73] (the "Governor's Motion");[2] (2) the **CDOC Defendants' Partial Motion to Dismiss Plaintiff's Amended Complaint [Doc. 66] Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure** [#76] (the "CDOC Motion");[3] and (3) the **BCCF Defendants' Motion to Dismiss Plaintiff's Amended Complaint** [#79] (the "BCCF Motion")[4] (collectively "the Motions to Dismiss"). The Court has reviewed the Motions to Dismiss [#73, #76, #79], the Responses [#83, #90, #91], the Replies [#85, #94, #97],[5] the entire case file and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motions to Dismiss are **granted in part and denied in part**.

## I. Facts and Procedural History

Plaintiff Rodney Douglas Eaves ("Plaintiff"), an inmate incarcerated in the Colorado Department of Corrections ("CDOC"), is proceeding pro se.[6] During the timeframe

---

2 This Motion [#73] is filed on behalf of Defendant Jared Polis, the Governor of the State of Colorado ("the Governor"). *Id.* at 1. "[#73]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order, and the page numbers cited are to CM/ECF.

3 The CDOC Defendants are Defendants Dean Williams ("Williams"), Travis Trani ("Trani"), Gypsy Kelso ("Kelso"), Anthony DeCesaro ("DeCesaro"), Marshall Griffith ("Griffith"), Jason Smith ("Smith"), and Andre Stancil ("Stancil"). *Id.* at 1.

4 The BCCF Defendants are Jerry Roark ("Roark"), David Hestand ("Hestand"), Steven Salazar ("Salazar"), Clara Casebolt ("Casebolt"), Larry Cox ("Cox"), Justin Arrasmith ("Arrasmith"), Derick Dockter ("Dockter"), Luke Holland ("Holland"), Tiffany Saldana ("Saldana"), and Colin Carson ("Carson").

5 While Plaintiff filed a Surreply [#92] to the BCCF Motion [#79], the Surreply is not considered because Plaintiff did not seek leave to file it or show why the Surreply was needed. *See Minute Order* [#101].

6 The pleadings of a pro se litigant "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Ajaj v. United States*, No. 15-cv-

relevant to his Amended Complaint [#66], Plaintiff was housed at the Bent County Correctional Facility ("BCCF"), a private prison operated by CoreCivic ("CC") pursuant to a contract with the CDOC.  *See BCCF Mot.* [#79] at 2.

Plaintiff filed his initial Complaint [#1] on May 10, 2021, alleging that Defendants engaged in practices pursuant to policy which substantially burdened Plaintiff's religion. Plaintiff thus brought claims pursuant to 42 U.S.C. § 1983 under the First Amendment Free Exercise Clause and the Equal Protection Clause, and claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. 2000cc.  *Id.*

On March 15, 2022, the Court issued an Order [#55] granting Motions to Dismiss [#22, #23, #45] as to the initial Complaint [#1].  *Id.* at 26-27.  While some claims were dismissed with prejudice, Plaintiff was permitted to amend the complaint as to the claims that were dismissed without prejudice.  *Id.* at 27.  Plaintiff filed an Amended Complaint [#66] on May 12, 2022.  Plaintiff has realleged  the claims which were dismissed without prejudice, and asserts new claims.  *See, e.g., id.* at 7, 23

The Amended Complaint [#66] generally alleges that while incarcerated at BCCF, Plaintiff (1) was denied his "right to possess sacred items for personal religious practice" (*id.* ¶ 7); (2) was "forced to pay for firewood and herbs" for his religious ceremonies while federal funds are used to provide materials for other faiths (*id.* ¶ ¶ 95, 102); (3) was denied the right to spiritually cleanse ("Wazila") his cell or embellish his headband and medicine

---

02849-RM-KLM, 2020 WL 5758521, at *2 (D. Colo. Sept. 28, 2020) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  However, the Court may not "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on [his] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

bag with beads and stones (*id.* ¶¶ 105, 115); (4) purchased firewood for his religious ceremonies that was given to other faiths or was taken by BCCF staff (*id.* ¶¶ 127-28, 134-38); (5) was prevented from practicing the "Sac and Fox" way of life because of being denied access to the facilities' faith grounds for ceremonial purposes (*id.* ¶¶ 149-50); and (7) was retaliated against for filing grievances and the complaint in this action (*id.* ¶ 166). These are generally the same issues that were asserted in the initial Complaint. Plaintiff has, however, added significantly more facts to support his claim as well as asserted new claims, as discussed previously. The facts are discussed in more detail in Section III, *infra*. Plaintiff seeks nominal, compensatory, and punitive damages, as well as injunctive and declaratory relief. *Am. Compl.* [#60] at 31-33.

The Governor's Motion [#73] and the BCCF Motion [#79] seek to dismiss the Amended Complaint [#66] in its entirety.[7] The CDOC Motion [#76] seeks to dismiss all claims except Plaintiff's official capacity claims brought under RLUIPA. *Id.* at 3. The Motions to Dismiss often make arguments that are not asserted in the other Motions. To that extent, the Court attempts to refer to the specific Motion at issue in addressing the arguments. However, since the Governor's Motion [#73] incorporates the arguments in the CDOC Motion [#76], and the CDOC and BCCF Motions [#76, #79] often both argue that certain claims should be dismissed, this is not always possible. The Court now turns to the merits of the Motions to Dismiss.

---

7  The Governor's Motion [#73] addresses only one issue – whether under Rule 12(b)(1) the Eleventh Amendment bars Plaintiff's federal constitutional claims for equitable relief against the Governor. *Id.* at 1, 5-7. However, the Motion [#73] argues that even if the Court has jurisdiction over some or all of the claims, the claims still must be dismissed for the reasons set forth in the CDOC Motion [#76], which the Governor joins in and adopts. *Id.* at 1, 7.

## II.  Standard of Review

### A.     Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) provides for a claim to be dismissed where the court lacks subject matter jurisdiction.  *Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186, 1188 (D. Colo. 2018), *aff'd*, 939 F.3d 1106 (10th Cir. 2019).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  The party asserting jurisdiction has the burden of establishing subject matter jurisdiction.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A challenge to the subject matter jurisdiction of a complaint can take the form of a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  A facial attack "questions the sufficiency of the complaint" whereas a factual attack "challenge[s] the facts upon which subject matter jurisdiction depends." *Id.* at 1002-03 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  When reviewing a facial attack on a complaint, as here, the Court accepts the allegations of the complaint as true. *Id.* at 1002.

### B.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) may be granted if the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (1955)).  A claim is facially plausible when the *factual* content of the complaint enables the Court "to draw

the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

Because plausibility is determined by the factual content, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.*  In determining whether a complaint is facially plausible, the Court does not "weigh

potential evidence that the parties might present at trial," but assesses only the plaintiff's

complaint  *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir.1991).  Facial plausibility need

not rise to the level of a probability but requires "more than a sheer possibility that a

defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678.  "

### III.  Analysis

**A.**    **The Eleventh Immunity and the Official Capacity Claims**

**1.**    **Official Capacity Claims against the CDOC Defendants and the Governor for Monetary Damages**

Plaintiff has sued Defendants in both their individual and official capacities.  *Am.*

*Compl.* [#66] at 2-6.  The CDOC Defendants argue, and the Court agrees, that the official

capacity claims against them should be dismissed to the extent Plaintiff seeks monetary

damages. *See CDOC Mot.* [#76] at 10.  This finding also applies to the Governor.[8]  Under

the Eleventh Amendment, a state is not subject to suit for damages by its own citizens in

federal court absent a waiver.  *Kentucky v. Graham*, 473 U.S. 159, 169-70 (1985);

*Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).  Absent waiver by the state or valid

congressional override, the Eleventh Amendment thus "bars a suit brought in federal court

by the citizens of a state against the state or its agencies, and applies 'whether the relief

---

8  The Court addresses in Section III.A.3, *infra*, the official capacity claims as to the BCCF
Defendants.

sought is legal or equitable.'"   *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (quotation omitted).   The Eleventh Amendment "confers total immunity from suit, not merely a defense to liability[,"] *Ambus v. Granit Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993), and applies to § 1983 claims.  *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

The State of Colorado's immunity under the Eleventh Amendment also extends to state employees acting in their official capacities.   "Such suits are equivalent to suits against a public entity and are barred by the Eleventh Amendment."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

Based on the foregoing, the CDOC Motion [#76] is **granted** as to this issue, and the official capacity claims for monetary damages against the CDOC Defendants and the Governor under 42 U.S.C. § 1983 are barred under the Eleventh Amendment. Accordingly, these claims are **dismissed without prejudice** for lack of jurisdiction.  *See Shue v. Lampert*, 580 F. App'x 642, 644 (10th Cir. 2014).

## 2.    Monetary Damages Under RLUIPA

Unlike the claims asserted under § 1983, the CDOC Defendants assert, and the Court agrees, that Plaintiff's claims under RLUIPA must be dismissed to the extent he seeks relief against Defendants in their *individual* capacities for damages, because such relief is unavailable under RLUIPA.  *See CDOC Mot.* [#76] at 11.  The Tenth Circuit has made clear that "[t]here is no cause of action under RLUIPA for individual-capacity claims." *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012).  Plaintiff concedes this point.  *Resp. CDOC Mot.* [#90] at 8.  Accordingly, to the extent Plaintiff seeks monetary damages under RLUIPA against any of the Defendants in their individual capacity, these

claims are **dismissed with prejudice**.  *Hamlin v. Smith*, No. 07-cv-01058-EWN-KMT, 2008 WL 4210795, at *6 (D. Colo. Sep. 10, 2008)**.**  The CDOC Motion [#76] is **granted** as to this issue.  Plaintiff's claims under RLUIPA "are limited to official capacity claims for [prospective] equitable relief "  *Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015).

### 3. Whether the BCCF Defendants Can Be Sued in Their Official Capacities under 42 U.S.C. § 1983

The BCCF Defendants assert that they cannot be sued in their official capacities because they do not have such capacities under 42 U.S.C. § 1983 as private employees of CC.  *BCCF Mot.* [#79] at 2, 4-5.  While Plaintiff conceded this issue (Response to BCCF Motion [#83] at 1), the Court disagrees with the BCCF Defendants' contention.  The BCCF Defendants did not cite the applicable law or adequately brief this issue.  The Tenth Circuit and cases from this Court have made clear that while CC is a private corporation, it can be sued in its official capacity under § 1983.  *Smedley v. Corr. Corp. of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (holding that "[w]hile it is quite clear that *Monell* itself applied to municipal governments and not private entities acting under color of state law, it is now well-settled that *Monell* also extends to private defendants sued under § 1983[,]" including Correctional Corporation of America ("CCA") (quotation omitted);[9] *see Monell v. Dep't of Social Servs.*; 436 U.S. 658 (1978).  For a private defendant such as CC to be liable under § 1983 for the tortious acts of its employees, Plaintiff must show that CC "directly caused the constitutional violation by instituting an 'official municipal policy of some nature,' . . . that was the 'direct cause' or the 'moving force' behind the constitutional violations."

---

9  CCA is the prior name of CC.  *BCCF Mot.* [#79] at 3.

*Smedley*, 175 F. App'x at 946; *see also Mohammad v. Core Civic Inc.*, No. 18-cv-00772-WJM-MEH, 2019 WL 4695822, at *5 (D. Colo. Sep. 26, 2019); *Hockaday v. Core Civic*, No. 18-cv-00396-GPG, 2018 WL 10207996, at *1-2 (D. Colo. Feb. 27. 2018).[10]

While the BCCF Motion [#79] argues that Plaintiff is relying only on CDOC policies and not CC policies, *see id.* at 4, it does not cite the applicable law as discussed above or explain how it applies to the BCCF Defendants.  Moreover, the BCCF Motion [#76] does not address Plaintiff's allegation that CC develops its own policies, his citation to a policy of CC (1-1BB), and his allegations that the BCCF Defendants should have created a facility-wide policy that would address his claims that he was not permitted to practice his religion.  *See, e.g., Am. Compl.* [#66] at 7-8, 11, 14.  Plaintiff was therefore not given the opportunity to address whether his allegations are sufficient to establish liability under *Monell* against BCCF or its agents.  Accordingly, the Court finds that resolution of whether the official capacity claims against the BCCF Defendants should be dismissed is premature, and the BCCF Motion [#79] is **denied** as to this issue.[11]

---

[10]  The Court finds the cases cited by the BCCF Defendants to be unpersuasive. Defendants rely on a footnote in the unpublished Tenth Circuit case of *Jones v. Barry*, 33 F. App'x 967 972 n. 5 (10th Cir. 2002).  This footnote was relied on by the other two unpublished cases from the Western District of Oklahoma cited by the BCCF Defendants.  *BCCF Mot.* [#79] at 4-5. The *Jones* decision noted that the defendants had informed the court, with no objection by the plaintiff, that the prison at issue was private and operated by CCA. 33 F. App'x at 972 n. 5.  As a result, the Tenth Circuit stated that the CCA Defendants were not state actors and did not have an "official capacity" for purposes of the Eleventh Amendment.  *Id.*  Not only was there no explanation or authority cited for that holding, this Court notes that the prison operated by CCA in *Jones* was not under contract with any state entity, but with the District of Columbia and the United States Marshal Service.  *Id.* at 969.  With that backdrop, the ruling makes sense.  Here, by contrast, CC contracted with the CDOC, a state agency.  *See BCCF Mot.* [#79] at 3.  Accordingly, the Court finds the *Jones* case to be distinguishable.

[11]  The Court additionally notes that the BCCF Defendants did not address the related issue of whether the RLUIPA official capacity claims should be dismissed against them, which is

### 4.      Claims for Equitable Relief Against the Governor

The Governor asserts that the Eleventh Amendment bars Plaintiff's federal constitutional claims for equitable relief. *Governor's Mot.* [#73] at 5-7. The Governor reiterates that the Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state. *Id.* at 5. The Governor is, undisputedly, an arm of the state. *Id.* The Governor acknowledges, however, that the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), created an exception to this jurisdictional bar which permits "suits against state officials seeking to enjoin alleged ongoing violations of federal law." *Governor's Mot.* [#73] at 5 (citing *Peterson v.* Martinez, 707 F.3d 1197, 1205 (10th Cir. 2013)). However, the Governor argues that this exception does not apply in this case because he has no duties to manage the day-to-day operations of BCCF. *Id.* at 6 (citing *id.*).

Turning to the analysis, when a state official is named as "a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, . . . such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Peterson*, 707 F.3d at 1205. Thus, to overcome Eleventh Amendment immunity, the state official who the plaintiff seeks to enjoin must have "a particular duty to enforce" a statute in question and "a demonstrated willingness to exercise that duty." *Id.* In other

---

significant given that RLUIPA does not authorize claims against Defendants in their individual capacity as discussed in the previous section. Given the fact that this issue has not been raised or briefed, the Court does not address it. *See, howeve*r, *Woodstock v. Shaffer*, No. 15-cv-00041-REB-KMT, 2016 WL 8727190, at *2-3 (D. Colo. Feb. 5, 2016), *R & R* adopted, 169 F. Supp. 3d 1169 (D. Colo. 2016).

words, the state official must have some connection with the enforcement of the acts at issue. *Finstuen v. Crutcher*, 496 F.3d 1139, 1151 (10th Cir. 2007).

Here, while the Governor asserts that Plaintiff has failed to show a connection between the Governor and the management or operations of the BCCF, the Court disagrees. Plaintiff argues that his requests for policy changes were denied by the Governor and Defendants Williams and Trani, and that these Defendants then developed new policies that violated his right to exercise his religion. *See Resp. Governor's Mot.* [#91] at 5; *see also Am. Compl.* [#37] at 22 (describing the relevant policies that the Governor created and how they denied Plaintiff the right to practice his faith). Plaintiff further cites a case from this Court in support of his argument that the Governor has the requisite connection to the operations of the BCCF. *Resp. Governor's Mot.* [#91] at 5-6 (citing *Harris v. Polis*, No. 20-cv-02999-CMA-STV, 2021 WL 3024664 (D. Colo. June 23), *R. & R. Adopted*, 2021 WL 3021466 (July 16, 2021).

In *Harris*, an inmate brought suit against the Governor and others under § 1983 asserting various constitutional violations as a result of restrictions imposed in response to the COVID-19 pandemic. 2021 WL 3021466, at *11. *Harris* rejected the very argument at issue made here that the Governor is not a proper party under the Eleventh Amendment and *Ex Parte Young*, finding that under the Colorado Constitution, "'when [the defendant] is an administrative agency, or the executive branch of government, or even the state itself, the Governor, in his official capacity, is a proper defendant because he is the state's chief executive.'" *Id. at* *3 (quoting Colo. Const. art. IV § 2; *Ainscough v.*

*Owens*, 90 P.2d 851, 858 (Colo. 2004)).  Thus, "'[f]or litigation purposes, the Governor is the embodiment of the state.'"  *Id.* (quotation omitted).

In further support of its holding, *Harris* stated that "[c]ourts in this district have determined that because the Governor 'has final authority to order the executive directors of all state agencies to commence or cease any action on behalf of the state,' he is a proper party to this type of action."  2021 WL 3021466, at *11 (quoting *Sportsmen's Wildlife Def. Fund v. U.S. Dep't of Interior*, 946 F. Supp. 1510, 1515 (D. Colo. 1986); *Willdgrass Oil and Gas Committee v. Colorado,* 447 F. Supp. 3d 1051, 1061-62 (D. Colo. 2020)).  *Harris* further noted that "the Colorado Supreme Court recently reaffirmed this longstanding precedent, holding that '[t]he CDOC is an executive agency directly within the Governor's control [and] the Governor remains one of the proper defendants for the claims asserted.'"  *Id.* (quoting *Raven v. Polis*, 479 P.3d 918, 921-22 (Colo. 2021) ("[B]ecause he is the state's supreme executive, with ultimate authority over the executive agencies under his control, the Governor is an appropriate defendant in an action that seeks to enjoin or mandate enforcement of a statute, regulation, ordinance, or policy.")).

While the Governor urges the Court not to follow *Harris* or *Raven*, arguing that *Peterson* is the controlling law (Reply [#94] at 2), the Court rejects this argument.  Unlike *Peterson*, which did not address the issue before the Court about the Governor's authority over prisons within the CDOC, the *Harris* court did address this issue and supported its decision with guidance from the Colorado Supreme Court as well as other decisions of this Court.  Accordingly, the Court finds *Harris* and the authority cited therein persuasive and adopts their rationale.

The Governor's Motion [#73] is thus **denied** as to the argument that the Eleventh Amendment bars the equitable claims against the Governor.

## B.   Mootness of Issues

The CDOC Defendants argue that the claims regarding Plaintiff's access to the faith grounds for ceremonial purposes and the wearing of religious headwear (eagle feathers) are moot. *CDOC Mot.* [#76] at 5-7. The Court notes as to that issue that Article III of the United States Constitution requires that a "justiciable case or controversy" remain present at all stages of litigation. *United Sates v. Juvenile Male*, 564 U.S. 932, 936 (2011)). A court lacks subject matter jurisdiction if a cause of action is moot . *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). Thus, "[u]nder the constitutional mootness doctrine, the suit must present a real and substantial controversy with respect to which specific relief may be fashioned." *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997). A claim may become moot at any point in the controversy and deprive the Court of authority to decide questions which had previously been at issue. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990). A claim is moot when "the controversy is no longer live and ongoing." *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997).

If a plaintiff requests injunctive relief, the plaintiff "must show an ongoing, personal stake in the outcome of the controversy, a likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *Rezaq v. Nally*, 677 F.3d 1001, 1008 (10th Cir. 2012). In other words, the plaintiff must show a personal continued susceptibility to injury that is reasonably certain. *Jordon v. Sosa*, 654 F.3d 1012, 1024

(10th Cir. 2011).  If the plaintiff cannot show more than the mere possibility of a recurrence of the complained of conduct, the case ceases to be a real and live controversy.  *Rio Grande Silvery Minnow*, 601 F.3d at 1117.

Here, as to the faith grounds, the CDOC Defendants note that Plaintiff's prayer for relief requests an order requiring Defendants to "develop a plan to allow Mr. Eaves access to the faith grounds at least once a week even during lock downs or similar restrictions[.]"  *CDOC Mot.* [#76] at 6 (citing *Am. Compl.* [#66] at 31).  Plaintiff also requests the Court to "[d]eclare the Defendants' duties with respect to these rights."  *Id.* (citing *id.*)  The CDOC Defendants aver, however, that Plaintiff does not allege that he is *currently* restricted from accessing the faith grounds in any way.  *Id.* (citing *Am Compl.* [#66] at 21-22, ¶¶ 149, 162) (alleging he was last unable to access faith grounds during a COVID lock down in January 2022 and his religious exercise was restricted between March 2020 and March 2022).  The Court **grants in part and denies in part** the CDOC Motion [#76] based on this argument.

First, the Court agrees with the CDOC Defendants that to the extent Plaintiff is asserting claims related to the restriction of access to the faith grounds during COVID-19 (see, e.g., Amended Complaint [#66] at 21-22), these allegations are moot.  These same allegations were dismissed as moot in the Court's Order [#55] on the prior Motions to Dismiss (*id.* at 5-6), and the Court reiterates this ruling in connection with the current Motions to Dismiss.  Accordingly, the CDOC Motion [#76] is **granted** as to this issue.

However, the Court rejects the mootness argument to the extent it asserts that Plaintiff does not allege that he is currently restricted from access to the faith grounds.

Plaintiff has alleged that even after the COVID-19 restrictions were lifted, he was denied access to the faith grounds by Defendants Hestand, Casebolt, and others. *Am. Compl.* [#66] at 22-29. In fact, Plaintiff alleges that he has been denied that right "for 24 months or a total loss of 104 ceremonies." *Id.* at 22, ¶ 163. The Court thus construes the Amended Complaint [#66] as alleging that Plaintiff is still restricted from accessing the faith grounds, and the CDOC Motion [#76] arguing that this claim is moot is **denied** as to this issue.

As to Plaintiff's ability to wear his religious head wear, the CDOC Defendants note Plaintiff's allegation that AR 800-01(IV)(R)(8) required all religious head wear to be covered by a baseball or stocking cap and, as a result, Plaintiff was not able to wear his eagle feather head wear. *CDOC Mot.* [#76] at 6-7 (citing *Am. Compl.* [#66] at 14, ¶ 59). Defendants state, however, that Plaintiff admits that the above AR now allows inmates to wear religious head wear without wearing a cap. *Id.* (citing *id.* at 29, ¶ 229). Despite this admission, the Court finds that the claim regarding Plaintiff's head wear is not moot.

Thus, Plaintiff states in his Response [#90] to the CDOC Motion [#76] that he asserts claims related to his headwear (1) because other inmates are permitted to wear their religious head wear at all times while Plaintiff is only permitted to wear his head wear in his cell or at religious ceremonies (Amended Complaint [#66] at 14, ¶ 72), and (2) Plaintiff was retaliated against for filing grievances and a lawsuit by being told if he wore his head wear it could be confiscated (*id.* at 66, ¶¶ 229-36). The Court finds from this that Plaintiff has averred that the actions of Defendants in relation to his religious head wear, which Plaintiff avers violate his constitutional rights, are "live and ongoing." *Green*, 108

F.3d at 1299. Hence, Plaintiff's claims related to his religious head wear are not moot, and the CDOC Motion [#76] is also **denied** as to this issue.

Based on the foregoing, the mootness argument in the CDOC Motion [#76] is **granted** as to the alleged lack of access to the faith grounds during the COVID-19 restrictions, but **denied** as to the remaining arguments.

## C.     Other Preliminary Matters

### 1.     Damages for Emotional Distress Under the Prison Litigation Reform Act ("PLRA")

The CDOC Defendants next argue that Plaintiff's claims for emotional distress are barred under the PRLA because Plaintiff has not alleged a physical injury. *CDOC Mot.* [#76] at 11-12. The PLRA prohibits a prisoner confined in a correctional facility from bringing a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id.* at 11 (citing 42 U.S.C. § 1997e(e)).

Here, the CDOC Motion [#76] asserts that Plaintiff claims no actual physical injury, but alleges that he is "constantly depressed and stressed without being able to pray in my language. This brings on both physical and spiritual harm as some refer to as bad karma." *Id.* at 11-12 (citing *Am. Compl.* [#66] at 9, ¶ 23). In his Response [#90], Plaintiff points to his allegation that "[b]ecause [he] could not cleanse [his] spirit or ask Ketchemanetowa for protection, [he] contracted COVID-19 and got really sick" and "no longer ha[s] a sense of smell." *Id.* at 9 (quoting *Am. Compl.* [#66] at 23, ¶ 164). Plaintiff further alleges that he "permanently lost this sense as punishment from the spirts. . . ." *Id.* Plaintiff thus asks the Court to find for purposes of the Motion [#76] that he has

plausibly alleged a physical injury, and argues that this issue is for the trier of fact to decide because the Court and Defendants cannot "decide the validity" of his belief." *Id.*

In their Reply [#97], the CDOC Defendants argue that the Court should reject Plaintiff's argument as implausible and conclusory. *Id.* at 4-5.  First, Defendants argue that "the assertion that divine retribution is the cause of his COVID-19 is not plausible, because there is a much more likely explanation – i.e., there was a highly contagious respiratory virus circulating in the world, and especially in prisons." *Id.* at 4.  Second, Defendants argue that Plaintiff's attribution of COVID-19 to his alleged religious issues is purely conclusory in the absence of any detailed factual allegations from which this Court could infer that similar issues are likely to cause illnesses in others. *Id.*

Turning to the analysis, neither party has provided any legal authority relevant to the issues raised by Plaintiff.  While Defendants cite cases that address injuries resulting from emotional distress (CDOC Motion [#76] at 5 n. 2), those cases are inapplicable to Plaintiff's alleged loss of smell from COVID-19.  The Court also rejects the argument in the CDOC Defendants' Reply [#97] that Plaintiff's allegations are conclusory because they do not state facts from which this Court could infer that similar issues are likely to cause illnesses in others. *Id* at 4.  That is not a requirement in order to satisfy the physical injury component of the applicable legal test.  The Court finds that the loss of a sense of smell may constitute a physical injury within the meaning of the PLRA, which Defendants did not address or dispute. *See Clifton v. Eubank,* 418 F. Supp. 2d 1243, 1245 (D. Colo. 2013) (stating that the term "physical injury" is not defined under the PLRA, and that "[a]ppeal courts have held that although a de minimis injury does not satisfy the PLRA's

physical injury requirement, an injury need not be significant to satisfy the statutory requirement.)

Furthermore, the Court agrees with Plaintiff that it cannot decide what his religious beliefs are, or whether those beliefs are plausible or supported under the Native American faith that he practices. *See Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007) ("The inquiry into the sincerity of a free-exercise plaintiff's religious beliefs is almost exclusively a credibility assessment, . . . and therefore the issue of sincerity is rarely to be determined on summary judgment," let alone a motion to dismiss.); *see also Yellowbear v. Lampert*, 741 F.3d 48, 54 (10th Cir. 2014) (stating that while the court "may ask whether a claimant truly holds a religious belief isn't to suggest we may decide whether the claimant's religious belief is true. After all, '[f]aith means belief in something concerning which doubt is still theoretically possible'"). While it is certainly plausible, and most likely probable, that Plaintiff contracted COVID-19 from his prison surroundings, the Court cannot categorically rule out or find implausible Plaintiff's belief that he contracted the illness as punishment from the spirits for not being able to practice his religion. This is an issue to be decided either on summary judgment or by the trier of fact, not on a motion to dismiss.

Based on the foregoing, the CDOC Motion [#76] is **denied** as to the argument that Plaintiff's claims for emotional distress are barred under the PRLA.

### 2. Joint and Several Liability

The CDOC Motion [#76] next argues that Plaintiff's requests for "joint and several" liability should be dismissed. *Id.* at 12. The Court agrees. Joint and several liability is a matter of state tort law, and Colorado has abolished such liability for personal cases,

except in cases of conspiracy.  *See Slack v. Farmers Ins. Exchange*, 5 P.3d 280, 284 (Colo. 2000); Colo. Rev. Stat. § 13-21-111.5.  The Amended Complaint [#66] does not contain any state tort law claims, and joint and several liability under state law is not applicable.  Accordingly, the CDOC Motion [#76] is **granted** as to this issue, and Plaintiffs' request for joint and several liability is **dismissed.**

### 3.    Whether the BCCF Defendants are Necessary Defendants

The BCCF Defendants argue that that they are not necessary parties to this lawsuit and should be dismissed because Plaintiff can achieve the requested relief, *i.e.,* mandatory injunctive relief, from the CDOC Defendants.  *BCCF Mot.* [#79] at 5.  Thus, it is argued that the conduct Plaintiff seeks to enjoin relates to the policies of CDOC, not BCCF, and that if BCCF is directed by CDOC to provide Plaintiff with certain personal religious items pursuant to any order from this Court, the BCCF Defendants will do so. *Id.*  The BCCF Defendants further contend that they do not have the authority to augment CDOC policy absent CDOC approval or Court order.  *Id.* at 6-7.  In addition, the BCCF Defendants assert that because Plaintiff has not made a claim for monetary damages, the absence of BCCF Defendants would not impede the Court from granting him the complete *injunctive* relief requested in his Amended Complaint.  *Id.* at 7.

The Court **denies** the BCCF Motion [#79] as to this issue.  As Plaintiff notes, he *is* seeking monetary damages in the form of nominal, compensatory, and punitive damages. *Resp. BCCF Mot.* [#83] at 1; *see Am. Compl.* [#66] at 31-33.   The BCCF Defendants may be liable for such damages under § 1983 for their personal participation in the alleged

violations of Plaintiff's constitutional rights. [12]   Accordingly, regardless of whether injunctive relief could be effected through the CDOC Defendants, the BCCF Defendants are necessary parties to this case.

**D.   The Merits of the Claims and Plaintiff's Requests for Relief**

    **1.   The First Amendment Free Exercise and RLUIPA Claims**

        **a.   The Legal Standard**

To allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry.  *Kay*, 500 F.3d at 1218.  First, the plaintiff "must show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.'" *Id.* (quotation omitted).  "A 'substantial burden' is one that: (1) significantly inhibits or constrains a plaintiff's religious conduct or expression, (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies the plaintiff reasonable opportunity to engage in fundamental religious activities."  *Mares v. LePage,* No. 16-cv-03082-RBJ-NYW, 2018 WL 1312814, at *3 (D. Colo. March 13, 2018) (quotations omitted). In addition, Plaintiff "must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." *Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010).

If a prisoner satisfies the substantial burden inquiry in connection with the free exercise claim, prison officials may then "'identif[y] the legitimate penological interests

---

12   This is not the case under RLUIPA, however, since individual capacity claims are barred.   *Stewart*, 701 F.3d at 1335.  As noted in Section III.A.3, *supra*, the Court has not addressed whether the BCCF Defendants may be sued in their official capacity claims for prospective equitable relief because this issue has not been raised or briefed.

that justif[ied] the impinging conduct.'" *Kay*, 500 F.3d at 1218 (quotation omitted).  "The burden then returns to the prisoner to 'show that these articulated concerns were irrational.'"  *Id.* at 1218 n. 2 (quotation omitted).  The Court then determines the reasonableness of the penological interests.  *Kay*, 500 F.3d at 1218-19.  The Motions to Dismiss focus on whether Plaintiff has met the second step of the initial two-step inquiry; namely, whether Plaintiff has alleged sufficient facts that the actions at issue were not reasonably related to legitimate penological interests.  Accordingly, the Court does not reach the later steps in the burden-shifting paradigm in this Order.

Turning to RLUIPA, that Act provides that 'no [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, unless the government shows that the burden furthers 'a compelling governmental interest' and does so by 'the least restrictive means.'"  *Kay*, 500 F.3d at 1221 (quoting 42 U.S.C. § 2000cc-1(a)(1)-(2)).  RLUIPA first requires the Court "to ask whether an inmate's (1) religious exercise is (2) substantially burdened by prison policy."  *Yellowbear*, 741 F.3d at 52.  The Act applies to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  *Kay*, 500 F.3d at 1221.  A burden on a religious exercise "rises to the level of being 'substantial' when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief. . . . "  *Yellowbear*, 741 F.3d at 55.

-21-

Unlike a First Amendment free exercise claim, there is no requirement under RLUIPA for the plaintiff to allege facts indicating that the actions at issue were not reasonably related to legitimate penological reasons.  *See AlAmiin v. Patton*, 2016 WL 11475169, at *31 (W.D. Okla. Aug. 30, 2016) (citing *Yellowbear*, 741 F.3d at 53, 56). Instead, if a substantial burden is shown under RLUIPA, "the burden of proof shifts to the government to show that the substantial burden results from a *compelling* governmental interest and that the government has employed the 'least restrictive' means of accomplishing its interest."  *Abdulhasseeb v Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).  Again, the Government has not addressed its burden of proof at the second step of the burden-shifting paradigm.

### b.    The Analysis of the Free Exercise and RLUIPA Claims

#### i.    Claim One

In Claim One, Plaintiff alleges that the BCCF and CDOC Defendants denied his request to personally possess sacred items for his personal religious ceremonies and practices consisting of a ceremonial pipe, eagle feather, a hand drum, a rattle, a flute, a ribbon shirt, and bells.  *Am. Comp.* [#66] at 7-14.  According to Plaintiff, "[t]he Sac and Fox way of life incorporates the use of prayer, song, dance, ceremony, craft, and daily conduct as an only way to express religion that respects Ketchemanetowa and the creation[,] and in turn Ketchemanetowa provides protection to me and my family and of my physical and spiritual being."  *Id.* at 7.

More specifically, as to a pipe, Plaintiff acknowledges that a pipe is used in Native American ceremonies at BCCF, but avers that he needs a personal pipe because the

ceremonies are practiced in the Lakota religion, the only Native American faith recognized by the BCCF and CDOC. *Am. Compl.* [#66]. at 8-9.  Plaintiff further avers that the Lakota ceremonies do not allow him to use a pipe in the manner required to make prayers in the Sac and Fox way and denies his connection to the spirits and Ketchemanetowa. *Id.* Further, Plaintiff alleges that he is denied the use of the other faith items referenced above, which are integral parts of his religion and its ceremonies. *Id.* at 9-14.

## A.    The Substantial Burden Requirement

The Court first notes for purposes of the free exercise and RLUIPA claims that Defendants do not question or dispute that Plaintiff's Native American faith based on the Sac and Fox way constitutes a religion.  In addition, it is undisputed that Plaintiff's faith is sincerely held, and that the use of the faith items at issue in all of Plaintiff's claims are a part of Plaintiff's faith.  Finally and importantly, it is undisputed that the denial of the faith items or other items at issue that Plaintiff claims he needs to practice his faith constitutes a substantial burden on the exercise of Plaintiff's sincerely held religious beliefs.

In fact, the Court notes that Plaintiff has added pages of facts in Claim One about how the items at issue are sacred and how they are essential to his ability to practice his religion.  *Cf. Compl.* [#1] at 7-8 with *Am. Comp.* [#66] at 7-14.[13]  Defendants do not

---

13   Plaintiff thus alleges, for example, that (1) "[w]ithout a personal Pipe I am denied my connection to the [ ] spirts and Ketchemanetowa" and "cannot pray in my language[;]" (2) a rattle is used in all ceremonies and without a rattle, Plaintiff "lacks the power to summon any of the Spirits[;]" (3) "[w]ithout a personal Flute I have no way to connect with and commune with" the spirits[,]" and this brings violence into my life" in retribution; and (4) "[b]y forcing me to practice in Lakota ceremonies and denying me personal sacred objects to perform Sac and Fox ceremonies, is to deny me a way of life.  I cannot pray, sing, celebrate Sac and Fox holy days, or dance. . . ." *Am. Compl.*[#66] ¶¶ 23, 26-27, 31, 37; 54; *see also* ¶¶ 39-69 (similar allegations as to a hand-drum, ribbon shirt, dance-bells, head wear, a medicine bag, and a choker necklace).

address these or the other new allegations, or dispute that they meet Plaintiff's burden of showing that Defendants' denial of these items constitutes a substantial burden on the exercise of Plaintiff's religious beliefs.  The Court finds that Plaintiff's new allegations cure the deficiencies as to this claim which the Court found in its Order [#55] on the prior Motions to Dismiss.  The Court's Order [#55] was based on the finding that this claim as previously alleged failed to state a claim because Plaintiff alleged that he was able to utilize communal items for his religious practice, and only complained that he was not allowed to possess these items personally.  *Order* [#55] at 9.  Plaintiff has now made clear that he is completely denied the use of the alleged faith items, or as to a pipe, that he is not able to use it in the manner required by his faith.  *Am. Compl.* [#66] at 9-11.

Based on the foregoing, even though this issue is not contested, the Court finds that Plaintiff has alleged facts from which the Court can find that the deprivation of use of the faith objects at issue significantly inhibits or constrains Plaintiff's religious conduct or expression, or meaningfully curtails Plaintiff's ability to express adherence to his faith, *i.e.,* that Plaintiff has met the substantial burden requirement of both the First Amendment free association and RLUIPA claims in Claim One.  *See Am. Compl.* [#66] at 8-9; *see also Mares*, 2018 WL 1312814, at *3.  Accordingly, the Motions to Dismiss are **denied** as to the RLUIPA claim in Claim One, as this is all that Plaintiff is required to allege to state a case.

### B.    Legitimate Penological Interest

The Court next addresses the second step of the inquiry required to state a free exercise claim, *i.e.,* whether Plaintiff has alleged sufficient facts to indicate the plausibility

that the actions of which he complains were not reasonably related to legitimate penological interests.  While the CDOC Motion [#76] argues that Plaintiff has not met this requirement (*id.* at 14-15), the Court disagrees.

Plaintiff alleges that when he communicated with Defendant Roark, the Warden of BCCF, about the hardships the denial of the sacred objects was having on his day-to-day life, Roark assured Plaintiff he would look into the issue and see what the facility could do to provide access to the sacred items requested by Plaintiff.  This was allegedly consistent with "CC's 1-1BB policy." *Am. Compl.* [#66] at 11, ¶ 42.  However, nothing was ever done about Plaintiff's request.  *Id.* ¶ 43 ("After multiple attempts between October 2020 and January 2021 no attempt was made to accommodate a least restrictive means for me to posses [sic] personal sacred objects other than an outright denial.")  There are no allegations that Defendant Roark raised any legitimate penological reasons for denying Plaintiff's requests for his faith items; instead, his response to Plaintiff indicated that Plaintiff's request tor access to faith items may be feasible.  From this, the Court can plausibly infer that the denial of the faith items was not due to legitimate penological reasons, but for other reasons that caused Roark to simply ignore Plaintiff's requests.

This finding is further supported by the allegation that when Plaintiff asked BCCF Defendants Hestand, Salazar, Kelso, and Griffith about obtaining faith items, they denied these requests without any research into the Sac and Fox religion and whether Plaintiff may have a constitutional right to such items.  *Am. Compl.* [#66] at 8.  In fact, Plaintiff alleges he was referred to as an "Indian" by Defendant Hestand, and told that his beliefs are the same as all other Indians.  *Id.* at 12, ¶ 51.  Finally, Plaintiff alleges that Kelso,

Griffith, and Smith, who do not work at BCCF (CDOC Motion [#76] at 22) were "falsifying reports" about his requests. *Am. Compl.* [#66] at 8, 22, ¶ 9; 14 ,¶ 73.   Based on the foregoing, the Court **denies** the CDOC Motion [#76] as to the argument that Plaintiff did not meet the second prong of the test to state a free exercise claim.

While the Court has already found allegations from which it can infer that the actions at issue were not reasonably related to legitimate penological interests, the Court addresses the CDOC Defendants' specific argument that Plaintiff failed to allege any facts indicating how or why a denial of a personal ceremonial pipe is not reasonably related to a legitimate penological interest. *Id.* at 14. The CDOC Defendants state in that regard that Plaintiff fails to assert why CDOC's legitimate penological interest in health and safety would not apply to an inmate's possession of a personal pipe that the inmate intends to smoke. *Id.* at 14 (citing, e.g., *Dayson v. Caruso*, No. 2:12-cv-455, 2013 WL 1857445, at *5 (W.D. Mich. May 2, 2013) ("Prison officials have a legitimate governmental interest in preventing prisoners from possessing tobacco and matches in their personal property, as those items possess a clear danger to the health and safety of prisoners and prison staff."); *see also CDOC Reply* [#97] at 6-7.

The CDOC Defendants further aver that courts which have directly addressed similar issues have found that prisons have legitimate penological interests in denying personal possession of similar items. *CDOC Mot.* [#76] at 14. Again, the CDOC Defendants point to *Dayson*, in which the Native American prisoner alleged that tobacco and matches were required as sacred items for a smudging ritual, and tobacco was the only way to pray to certain deities in the Native American religion. 2013 WL 1857445, at

*4.  The *Dayson* court, however, held the prison's policy of not allowing Native American prisoners to possess materials for a smudging ritual in their cells did not violate the prisoner's First Amendment free exercise rights.  *Id.* at *5.

From the foregoing, the CDOC Motion [#76] focuses only on the pipe requested by Plaintiffs, and asserts no argument that Plaintiff failed to meet the second prong of the test as to any of the other faith items at issue.  The Court is thus only required to determine whether Plaintiff met his burden at the initial stage of alleging facts from which a reasonable inference can be drawn that the denial of a pipe was not reasonably related to a legitimate penological interest.  The Court finds that Plaintiff has met this burden.

Plaintiff has alleged that a pipe is already permitted in religious ceremonies at BCCF, including at the Lakota ceremony and the sweat lodge.  *Am. Compl.* [#66] at 8, 14.  This indicates that safety concerns as to the use of pipes and tobacco noted in the cases cited by Defendants may not be legitimate, at least as to the use of pipes in ceremonies that are authorized at BCCF.  Second, as previously discussed, Plaintiff has alleged as to his personal use of the faith items at issue (including the pipe) that when he approached Warden Roark about the hardships from the denial of these items, Roark told Plaintiff that he would look into the issue and see what the facility could do to provide access to these items, which items would be held in the Chaplain's office.  *Am. Compl.* [#66] at 11, ¶ 42.  This indicates BCCF's willingness to consider that the faith items requested by Plaintiff, including a pipe, could be provided in a way to accommodate the facility's legitimate penological interests, such as keeping them in the Chaplain's office.  Plaintiff was never provided a reason why this did not happen.  *Id.* at ¶ 43.

Further, construing the evidence in the light most favorable to Plaintiff, it appears he did not insist that a pipe be provided for use in his cell (see Response [#90] at 12), which again may implicate the type of security concerns referenced in the cases relied on by the CDOC Defendants.  Instead, Plaintiff alleges that he offered the alternative that the faith items could be stored in a secure area with a special process required to obtain such items (Amended Complaint [#66] at 11, ¶ 44), and that he wanted to use the pipe at the faith grounds.  *Resp. CDOC Mot.* [#90] at 12-13.  Nonetheless, Defendants did not get back to Plaintiff as to that accommodation or consider whether Plaintiff could use the pipe at the faith grounds.  Instead, Plaintiff continued not to be able to use a pipe in a manner that would accommodate his religious beliefs.  *Id.* ¶ 43.  Based on the foregoing, the Court finds that Plaintiff has stated plausible allegations that the outright denial of a pipe to Plaintiff, with no consideration of whether restrictions could be imposed to meet safety or other concerns, was not reasonably related to legitimate penological interests. The Court thus finds that Plaintiff has met his burden of establishing the two-step inquiry.

### C.  Personal Participation

Finally as to Claim One, the Court addresses the argument by the CDOC and BCCF Defendants that Plaintiff failed to plead their personal participation.  First, as to the CDOC Defendants, Plaintiff alleges that Defendants Salazar, Kelso, Griffith, and Smith denied his request to personally possess alleged sacred items for his personal religious ceremonies and practices.  *CDOC Mot.* [#66] at 21 (citing *Am. Compl.* [#66], at 7-9, 12, 14 ¶¶ 8-9, 47, 72).  Similarly, Plaintiff alleges that BCCF Defendants Hestand, Carson, and Roark either denied his request for faith items or never got back to him about this

-28-

request.  *See Am. Compl.* [#66] at 7-14.  The CDOC Motion [#76] asserts that these allegations relate solely to denials of grievances and responses to requests for accommodations or policy changes, and that this is not sufficient to show personal participation.  *Id.* at 21-22.  The BCCF Motion [#79] makes essentially the same argument. *Id.* at 9.  The Court disagrees, and finds that Plaintiff has adequately alleged the personal participation of the BCCF and CDOC Defendants identified in Claim One.

First, the CDOC and BCCF Defendants cite authority that the denial of grievances is insufficient to demonstrate personal participation.  *CDOC Mot.* [#76] at 22; *BCCF Mot.* [#79] at 9.  Here, however, Plaintiff has alleged that he was told he could not grieve his requests for faith items (Amended Complaint [#66] at 7 ¶ 5), and has alleged that the Defendants identified in Claim One personally denied his requests for the faith items, with no investigation or understanding of his religious practices.  *See Am. Compl.* [#66] at 7-8.  Accordingly, Claim One is not simply based on the denial of grievances; and the named Defendants who denied Plaintiff's requests were "personally involved in the violation[s] alleged" as required to show personal participation.  *Baird v. Corrs. Corp. of Am.*, No. 10-cv-00537-ZLW-CBS, 2011 WL 742468, at *5 (D. Colo. Jan. 5, 2011); *see also Hamlin v. Smith*, No. 07-cv-01058-EWN-KMT, 2008 WL 4210795, at *6 (D. Colo. Sep. 10, 2008)**.**[14]

In addition, the CDOC Motion [#76] asserts that Williams should be dismissed from this claim for lack of personal participation.  The Motion [#76] notes that Plaintiff's only

---

14 Regardless of whether the BCCF Defendants were following instructions from CDOC employees and CDOC policies (BCCF Motion [#79] at 9), they are liable for their own personal participation in the constitutional violations as stated in *Baird* and *Hamlin*.  Further, the Court rejects the argument that Plaintiff's allegations are conclusory, as Plaintiff specifies how each BCCF Defendant violated Plaintiff's constitutional rights and failed to conduct his/her duties.

allegation as to Williams is that Defendant Kelso denied Plaintiffs' request for faith items with a memorandum issued from Williams and the Governor. *CDOC Mot.* [#76] at 21-22 (citing *id.* at 8, ¶ 8.)  It is argued that Plaintiff has only alleged that Williams's name was included on memoranda and/or letterhead, and alleges no other facts regarding Williams's lack of control or failure to supervise.  *Id.* Thus, even with reasonable inferences in his favor with regard to the denials of requests and grievances, the CDOC Defendants assert that Plaintiff's claim against Williams should be dismissed based on lack of personal participation.  *Id.*  The Court infers that this argument may also apply to the Governor, whose Motion [#73] has incorporated the CDOC Defendants' arguments. The Court agrees that in order for Defendant Williams (as well as the Governor) to be proper defendants, Plaintiff must allege their personal participation.  Plaintiff can establish personal participation by averring that Defendants' subordinates violated the constitution, and that there is an '"affirmative link' between [the Defendants] and the violation."  *Serna v. Colo. Dep't of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006).

The Court finds that "simple awareness" of Plaintiff's allegations "by virtue of" the receipt of correspondence does not constitute personal participation.  *Andrews v. Huber*, No. 11-cv-01366-MSK-KLM, 2012 WL 3538725, at *5 (D. Colo. April 2, 2012).  The issue is whether there are plausible allegations that Williams (and the Governor) either directed their subordinates to take or to refrain from the action that resulted in the alleged constitutional violations or had actual knowledge that their subordinates were committing the alleged constitutional violation.  *Id.*  Supervisory liability can also be imposed "'upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which

subjects. . . plaintiff to the deprivation of'" constitutional rights, and acts with the required state of mind, *i.e.,* the authorization or approval through the policy of the misconduct related to the constitutional violation. *Brown v. Montoya*, 662 F.3d 1152, 1163-64 (10th Cir. 2011); *Dodd v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). The implementation of an unconstitutional policy can thus serve as the supervisor's "'affirmative link' to the constitutional violation." *Dodds*, 614 F.3d at 1199.

Here, the Court finds that Plaintiff has alleged that Williams (and the Governor) created and enforced a policy (or an AR) that directly subjected Plaintiff to a deprivation of his constitutional rights. Further, it can be inferred from the memorandum on the letterhead from Williams and the Governor that they were aware that their subordinates in the BCCF and CDOC were allegedly violating Plaintiff's constitutional rights in regard to his faith, meaning that there is an affirmative link between that conduct and Williams and the Governor. The facts, taken in the light most favorable to Plaintiff, show these Defendants "may have played more than a passive role in the alleged constitutional violation—[they] may have deliberately enforced or actively maintained the policies in question" at the facility even after having knowledge of Plaintiff's assertion of the violation of his constitutional rights. *Id.* at 1203-04. Accordingly, the CDOC and BCCF Motion [#76, #79] are **denied** as to the issue of lack of personal participation.

### D. Conclusion as to Claim One

In conclusion, the Court **denies** the Motions to Dismiss as to the First Amendment free exercise and RLUIPA claims in Claim One.

###### ii.    Claim Two

In Claim Two, Plaintiff avers that he missed out on a number of religious ceremonies because he did not have funds to purchase the firewood and herbs required for the ceremony. *Am. Compl.* [#66] at 14-15.  When Plaintiff brought this to the attention of Defendant Hestand, and stated that funds should be provided to purchase these materials pursuant to AR 800-01(IV)(M) (approving donations of equipment or materials for use in faith-based programs), Hestand responded that he did not have to provide such donations pursuant to the Colorado Constitution. *Id.* at 15.  Defendants Salazar and Griffith also denied a solution regarding Plaintiff's need for funds for the firewood and herbs, and DeCesaro (on a letterhead from Williams and the Governor) advised that "[e]ach faith group is financially responsible for procuring faith-based property." *Id.* Plaintiff avers, that firewood and herbs are not faith-based "property" and should be provided through federal funds, and points to other faiths where such funds are provided for materials. *Id.*

The CDOC Defendants argue that Claim Two should be dismissed because this claim was dismissed with prejudice in the Court's prior Order [#55]. *CDOC Mot.* [#76] at 13 n. 5 (citing *Order* [#55] at 15).  Plaintiff asserts that he is asserting a different claim than in Claim Two of the initial Complaint [#1], and that he no longer relies on federal and state law in which he had no private right of action. *Resp. CDOC Mot.* [#90] at 9 n. 1. The Court disagrees with Plaintiff.  While Plaintiff may have relied on state and/or federal law in addition to RLUIPA and the First Amendment in the initial Complaint [#1], that claim

and the claim as reasserted in the Amended Complaint [#66] with some additional allegations, are essentially the same.  The thrust of the claim is that Plaintiff was improperly denied federal funds for the firewood and herbs he needs for religious ceremonies, forcing Plaintiff to do without and miss ceremonies.  The Court dismissed this claim with prejudice in its Order [#55] on the previous Motions to Dismiss, finding that under the First Amendment and RLUIPA, "prison officials do not have an affirmative duty to provide free religious materials or other articles to inmates."  *Id.* at 14-15 (citing *Rea v. Colorado Dep't of Corrs.*, No. 09-CV-03014-REB-CBS, 2010 WL 5575163, at *6 (D. Colo. Dec. 7, 2010), *R and R adopted*, No. 09-CV-03014-REB-CBS, 2011 WL 110917 (D. Colo. Jan. 13, 2011).  Accordingly, the Court held that inmates "have no right to force the CDOC to purchase additional materials for their personal religious use."  *Id.*  Since the claim was dismissed with prejudice, Plaintiff cannot reassert it with different or new allegations, or make additional arguments as to why dismissal was not proper.

It appears, however, that Claim Two may also assert religious discrimination for disparity in treatment between religions in regard to materials, utilities, or other items. *See Am. Compl.* [#66] at 16.  This claim was dismissed without prejudice in the prior Order [#55], and is thus not necessarily barred as a result.  *Id.* at 16.  Nonetheless, the Court finds that this portion of Claim Two should be dismissed for the same reason as stated in the prior Order [#55] and in the current CDOC Motion [#79].  *See id.* at 17-19.

"To state a claim for religious discrimination in violation of the First Amendment, a plaintiff must plead "that the defendant acted with discriminatory purpose[,]" which "'requires more than intent as volition or intent as awareness of consequences.'"  *Iqbal*,

556 U.S. at 676 (quotation omitted). "It instead involves a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Id.* at 676-77 (citation omitted; alteration in original). Similarly, to state a religious discrimination claim under RLUIPA, Plaintiff must make allegations of discriminatory intent. *See* 42 U.S.C. § 2000cc(b)(2); *Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 198 (2d Cir. 2014).

Here, as with the prior version of this claim in the initial Complaint [#1], Plaintiff does not allege any facts from which the Court can infer discriminatory intent. The facts which Plaintiff did plead on that issue are merely conclusory. For example, Plaintiff averred that "[t]he defendants listed above for their own reasons, lack of knowledge, purposely, or negligently, continue to attempt the cultural genocide of the Sac and Fox and my way of life". *Am. Compl.* [#66] at 12 ¶ 50. This type of conclusory allegation is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681.

Further, Plaintiff has alleged no facts that as compared to other religions which were provided faith-based materials, a decisionmaker required Plaintiff or other Native Americans to pay for their firewood and herbs because of, not in spite of, the Native American religions. *See Iqbal*, 556 U.S. at 676. In fact, a finding that the requirement to pay was "because of" Plaintiff's religion is not plausible given Plaintiff's allegation that he was told the basis for the requirement that he pay for firewood and herbs was that "'[e]ach faith group is financially responsible for procuring faith-based property" under the Colorado Constitution. *Am. Compl.* [#66] at 15 ¶ 8. Assuming firewood is faith-based property, this would appear to be a neutral, nondiscriminatory reason for requiring Plaintiff

and other Native Americans to pay for the firewood and herbs.  Further, as to the materials, utilities, or other items which were allegedly provided to other faiths, Plaintiff has not alleged facts from which the Court can find that these items were "faith-based property" that should have been paid for.  Plaintiff has thus not plausibly alleged that he was discriminated against because of his Sac & Fox religion.

Based on the foregoing, the CDOC Motion [#76] is **granted** as to the portion of Claim Two that asserts a First Amendment free association claim and RLUIPA, since these claims were previously dismissed with prejudice.  Further, the CDOC Motion [#76] is **granted** to the extent Claim Two asserts a religious discrimination claim.

### iii.    Claim Three

In Claim Three, Plaintiff alleges that he submitted a request to Defendant Kelso to amend AR 800-01 to allow him (1) to "Wazila" (spiritually cleanse) his living space with sage smoke and cedar burnt inside unit cells and (2) to embellish his headband and medicine bag with beads and stones. *Am. Compl.* [#66] at 17, ¶¶ 105-06.  Kelso informed the Governor, Trani, and Williams as to this request, but did not consult with anyone in the Native American community to understand the importance of what Plaintiff was requesting.  *Id.*  Six months later, the Governor and Williams adopted a new AR 800-01 that did not consider the requirements of Plaintiff's faith.  *Id.* ¶ 107.  Since then, Plaintiff alleges that Defendant Trani enforces the AR despite his duty not to enforce any policy that violates the Constitution.  *Id.* ¶ 108.  Plaintiff alleges that in the Sac and Fox way, he is required to Wazila any structure he lives in so that bad spirits cannot come in, and that he has been denied this under the threat of discipline that would result in additional days

of imprisonment.  *Id.* at 17-18.[15]

Plaintiff further alleges that he has been denied the right to wear stones or embellish his headband or medicine bundle with beads or stones, and that this is also required as part of his religious beliefs.  *Am. Compl.* [#66] at 17-18.  Without the ability to do these activities, Plaintiff claims that "Ketchemanetowa will not offer protection which then passes on to other family members as disfavor."  *Id.* at 18, ¶ 122.  According to Plaintiff, Defendants Williams, Trani, Kelso, and the Governor chose "to create and enforce a policy that denies my religious expression when there are [less] restrictive means available," and that these Defendants "have collaborated together to create and enforce" these policies.  *Id.*, ¶ 125.

Turning to the merits, the Motions to Dismiss do not dispute that the activities that Plaintiff complains he cannot do are a substantial burden on his sincerely held religious beliefs.  Thus, the Court finds that Plaintiff has stated a RLUIPA claim.

The CDOC Motion [#76] asserts, however, that Plaintiff has not met the second part of the two-step test required to state a free exercise claim, because Plaintiff did not articulate facts which indicate that the preclusion of the activities is unrelated to legitimate penological interests.  *Id.* at 14-15.  It is argued in that regard that Plaintiff makes the conclusory allegation that "[t]here is no threat to the safety or security" to allow him to embellish his headband and medicine bag.  *Am. Compl.* [#66] at 19, ¶ 124.  Plaintiff

---

15   Unlike this claim in the initial Complaint [#1] which the Court construed to assert a single occasion when Plaintiff's request to spiritually cleanse his cell and to embellish objects was denied (Order [#55] at 17-19), Plaintiff has now alleged multiple occasions when these alleged violations occurred.  *See Am. Compl.* [#66] at 18.

additionally alleges, without supporting factual averments, that "there is no threat to the safety or security" to allow him to Wazila his living space under direct controlled supervision. *Id.* at 19, ¶ 123.

Defendants fail to note, however, that as to the request to Wazila his space, Plaintiff also asserts that while the facility is tobacco free, the sage and cedar required to spiritually cleanse the space are "not of the plant genus of tobacco." *Id.* Plaintiff further points out that the Wazila ceremony is only done upon moving into a new space, not on a daily basis, and that similar activities of lighting of Chanukah candles and smudging may be authorized if under supervision. *See Resp. CDOC Mot.* [#90] at 13-14, 20 (citing AR attached as Ex. A to the CDOC Motion [#76]).[16]  While the CDOC Defendants aver in their Reply [#97] that smudging and lighting of Chanukah candles are not permitted in an inmate's cell, *id.* at 9, it is undisputed that these activities are permitted at the facility. Liberally construed, the Court can plausibly infer from Plaintiff's allegations that the reasons given (safety and security) for not allowing Plaintiff to Wazila his cell or embellish his headband and medicine bag, at least under supervision, may not reasonably relate to legitimate penological interests.  Accordingly, at this stage of the litigation, the Court finds those allegations are sufficient to meet the second prong of the free exercise inquiry. Defendants' argument is better suited to the burden-shifting paradigm, where it is their burden to identify the legitimate penological interest that justified the denial of impinging conduct and Plaintiff's corresponding burden to show that this interest is irrational.

_____

16  As the CDOC Motion [#76] notes, the court may take judicial notice of CDOC's Administrative Regulations.  *Id.* at 7. N 3 (citing *Reynolds v. Colo. Dep't of Corrs.*, No. 12-cv-02558-PAB-KMT, 2015 WL 5168783, at *2 n. 4 (D. Colo. Sept. 3, 2015)).

Finally, the Court addresses the argument in the CDOC Motion [#76] that Plaintiff has failed to show personal participation on the part of the named Defendants in the claim. Similar to the arguments made in Claim One, the CDOC Defendants assert that the allegations that Plaintiff sent them correspondence is insufficient to show personal participation. *CDOC Mot.* [#76] at 20. The Court finds that this argument fails for the same reason as discussed in Claim One. While "simple awareness" of Plaintiff's allegations "by virtue of" the receipt of correspondence does not constitute personal participation, *Andrews*, 2012 WL 3538725, at *5, Plaintiff has alleged that Defendant Kelso informed the Governor, Trani, and Williams about Plaintiff's requests related to his faith, and that they then created and enforced a policy (through an AR) that subjected Plaintiff to a deprivation of his constitutional rights. It can plausibly be inferred from Kelso's advisement that all of the above Defendants were aware that their subordinates were allegedly violating Plaintiff's constitutional rights in regard to his faith, and that they chose to allegedly continue such a violation by enacting a new AR that also violated Plaintiff's constitutional rights. Accordingly, the Court finds that Plaintiff has demonstrated personal participation for purposes of the Motions to Dismiss in connection with Claim Three, and this argument is **denied**.[17]

.Based on the foregoing, the Motions to Dismiss are **denied** as to the First Amendment free association and RLUIPA claims in Claim Three.

---

[17] The CDOC Defendants' argument regarding a lack of personal participation as to Defendants DeCesaro, Griffith, and Smith is not considered given that those Defendants are not named in Plaintiff's claim. *See CDOC Mot.* [#76] at 20. Further, no BCCF Defendants were named in this claim, so the Court need not address the BCCF Defendants' argument that Plaintiff failed to allege personal participation as to them. *BCCF Mot.* [#79] at 11.

### iv. Claim Four

Claim Four also relates to firewood and herbs.  Plaintiff alleges that he donated money for the purchase of these materials for his religious ceremonies, and that the firewood was taken by BCCF staff members for their own use or by other faiths (the Asatru and the North American Paganism and Wiccan faiths).  *Am. Compl.* [#66] at 19. Accordingly, Plaintiff alleges that he was not able to practice his faith at numerous ceremonies.  *Id.* at 19-20.  Plaintiff avers that Defendants Trani, Williams, and the Governor have "developed a policy creating a loophole so firewood does not have to be purchased by the State because they claim it is 'property'" and that it can then "be given to anyone because the only way to obtain the firewood is to place funds into a common account by 'donation.'"  *Id.*  Plaintiff further alleges that he submitted a proposal to Hestand, Salazar, and Roark that there be a record kept as to how much was purchased or donated and who received the firewood, and that the firewood be placed in an area where staff and other faiths could not take it for their use.  *Id.*  According to Plaintiff, his proposal was not considered, even though there were less restrictive measures available, and there is still no accountability or documentation regarding the taking of firewood.  *Id.*

The Court again highlights that Defendants do not dispute that Plaintiff has alleged a substantial burden on a sincerely-held religious belief for purposes of RLUIPA. Accordingly, the Motions to Dismiss are **denied** as to the portion of Claim Four that alleges an RLUIPA claim.

As to the free exercise claim, while the CDOC Motion [#76] argues generally that Plaintiff failed to allege facts to show that their actions and policies are unrelated to

legitimate penological interests (*id.* at 13-14), the Motion only actually specifically addresses this issue as to Claims One and Three, not Claim Four.  *Id.* at 14-15.  In any event, the Court finds that the lack of a legitimate penological interest seems obvious in connection with the alleged dereliction of Defendants' duties, *i.e.,* Plaintiff alleges that he made donations into the Native American fund to purchase firewood needed for his religious ceremonies, was denied the ability to obtain firewood for several ceremonies because staff or other religions took the firewood, and that Defendants were advised of the issue but chose not to do anything.  *Am. Compl.* [#66] at 19-20.

The only specific argument made as to the RLUIPA and free exercise portion of Claim Four is the argument in the BCCF Motion [#79] that Plaintiff has not plausibly alleged that the conduct of Defendants in failing to ensure Plaintiff was permitted to obtain firewood from his donations and in permitting other faiths or staff to take the firewood was anything more than mere negligence.  *Id.* at 12.  As the Court noted in its Order [#55] on the prior Motions to Dismiss, the substantial burden on the exercise of Plaintiff's religion must be a "result of a defendant's 'intentional interference' with the plaintiff's free exercise rights to state a valid claim under § 1983'—negligence is not sufficient."  *Slater v. Teague*, No. 17-cv-02084-PAB-STV, 2018 WL 1800919, at *3 (D. Colo. March 21, 2018) (quoting *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th.Cir. 2009)); *see also McLeod v. Williams*, No. 18-CV-115 (RA), 2020 WL 2512164, at *6 (S.D.N.Y. May 15, 2020) ("[a] prison official must *knowingly* place a substantial burden on a prisoner's religious beliefs to incur liability for damages under RLUIPA or the Constitution[,]'" and "damages claims based solely on

the negligent infringement of a prisoner's right to religious freedom are not actionable under either the First Amendment or RLUIPA'") (quotation omitted).

The Court dismissed without prejudice Plaintiff's prior version of this claim in the initial Complaint [#1] because Plaintiff did "not allege that Defendants intentionally took any action that deprived Plaintiff of the firewood; instead, he alleges that Defendants failed to protect the firewood." *Order* [#55] at 20-21. In the Amended Complaint [#66], while Plaintiff continues to allege that the firewood he made donations for was not protected from staff or other faiths, he has also alleged that he put Defendants Hestand, Salazar, and Roark on notice of these activities and made a proposal to try to solve the problem, and that they just chose "to ignore their duties." *Am. Compl.* [#66] at 19-20. The Court finds that liberally construing Plaintiff's Complaint, Plaintiff has plausibly alleged that these Defendants knowingly or intentionally placed a substantial burden on Plaintiff's religion by not acting on the issues raised by Plaintiff, and has also plausibly shown their personal participation.[18] Accordingly, the Motions to Dismiss are **denied** as to the free exercise and RLUIPA claims in Claim Four.

The CDOC Motion [#76] argues, however, that to the extent Claim Four may assert a claim of religious discrimination in connection with the way other faiths were allowed to

---

18   The BCCF Motion [#79] asserts as to personal participation that Plaintiff does not allege that any of the BCCF Defendants were involved in the creation of the CDOC policy regarding the way in which firewood was handled or had the authority to amend or change this policy. *Id.* at 11  The Motion [#79] further asserts that Plaintiff has not alleged that the BCCF Defendants were engaged in the taking of the firewood. *Id.*  While this may be true, Plaintiff has alleged personal participation by their decision after having been advised of the problem with the firewood to ignore their duties and do nothing.

take firewood donated into a common fund, this portion of the claim should be dismissed. *Id.* at 17-19. The Court agrees and **dismisses** this claim to the extent it is alleged in Claim Four. As with Claim Two, Plaintiff alleges no facts from which the Court can infer discriminatory intent. Further, Plaintiff has alleged no facts that a decisionmaker required Plaintiff or other Native Americans to pay for their firewood and herbs because of, not in spite of, Plaintiff's Native American religion. *See Iqbal*, 556 U.S. at 676. In fact, Plaintiff alleged that he was told by Defendants "that because wood cannot be purchased except by donation into the Native American fund the wood purchased is considered donated wood and can be given to these faiths [Asatru, North Western European Paganism, and Wiccan] for their ceremonies." *Am. Compl.* [#66] at 19, ¶¶ 129, 130. This would appear to be a neutral, nondiscriminatory reason for the way firewood was handled by the facility, and Plaintiff has thus not plausibly alleged discrimination "because of" his Sac & Fox religion. *See Iqbal*, 556 U.S. at 676. Further, to the extent that Plaintiff claims religious discrimination in any of his other claims, these claims are **dismissed** for the same reason.

Based on the foregoing, the Motions to Dismiss are **denied** as to the First Amendment free association and RLUIPA claims in Claim Four, but **granted** as to the portion of Claim Four that may allege religious discrimination.

### v. Claim Five

Claim Five alleges that Defendant Hestand "embezzled" money donated by Plaintiff to the Native American fund to purchase firewood, "denying [Plaintiff] the opportunity to participate in" his religious ceremonies. *Am. Compl.* [#66] at 20, ¶¶ 137-38. Plaintiff alleges dates of ceremonies that he was not permitted to attend because

Hestand stated there was no money in the fund. *Id.* at 20, ¶¶ 146-47. According to

Plaintiff, Defendant Hestand conspires with another individual (perhaps a vendor) to

overcharge for firewood and then receives a "kick back[,]" and that Hestand also

overcharges for herbs required in ceremonies. *Id.* at 19, ¶¶ 140-41. Plaintiff avers that

he has asked for accountings and has failed to receive them. *See id.* at 20. [19] According

to Plaintiff, this violates his Fourteenth Amendment right to be protected from theft, and

the denial of his ability to practice his faith violates the First Amendment. *Id.* ¶ 148.[20]

The BCCF Motion [#79] asserts, and the Court agrees, that Plaintiff's claims that

Hestand conspired with another individual to overcharge for firewood, embezzled funds,

or received a kick back are conclusory and fail to state a claim. *Id.* at 12-13. These

allegations "[e]xpress[ ] a factual inference without stating the underlying facts on which

the inference is based." *Johnson v. City and Cnty. of Denver*, No. 06-cv-02133-CMA-

MJW, 2010 WL 466143, at *3 n. 5 (D. Colo. Feb. 8, 2010); *see also Durre v. Dempsey,*

*869 F.2d 543,* 545 (10th Cir. 1989) (holding that a plaintiff cannot sustain a conspiracy

claim solely with conclusory allegations); *Greenway Univ., Inc. v. Greenway of Arizona,*

*LLC*, No. 11-cv-01055-RBJ-KLM, 2012 WL 1801948, at *10 (D. Colo. Feb. 15, 2018)

(dismissing a conclusory claim of civil theft which appeared to have been "simply thrown

---

19 As the Court noted in its prior Order [#55] as to Plaintiff's request for an accounting of the firewood in connection with Claims Four and Five, this does not appear to be tied to Plaintiff's religion. *Id.* at 19-20 n. 12. As with the initial Complaint [#1], Plaintiff has not alleged in the Amended Complaint [#66] that the failure to obtain an accounting from Defendants substantially burdens his sincerely held religious beliefs or the exercise of his religion. This portion of Plaintiff's allegations thus fails to state either a free exercise or RLUIPA claim.

20 To the extent Plaintiff may be attempting to assert a due process claim in connection with this allegation, this is addressed in Section III.D.5**,** *infra*.

into a multi-claim complaint[,]" and noting that theft is a "serious crime, akin to fraud").

Further as to the merits of Claim Five, although Plaintiff would obviously prefer that the firewood or herbs be provided at a lower price, he does not allege facts showing his religious practices were substantially burdened by the quality of firewood or the price paid for such materials. Plaintiff does not allege that the firewood did not burn or that the firewood and herbs that Plaintiff purchased were defective in some way such that they could not be used in religious ceremonies. *See BCCF Mot.* [#79] at 13. Accordingly, the Court agrees with the BCCF Defendants that Plaintiff has failed to show that the cost of the firewood or the vendor selected substantially burdened the exercise of his religion by such things as 1) significantly constraining his religious expression, (2) meaningfully curtailing his ability to express adherence to his faith, or (3) denying him a reasonable opportunity to engage in fundamental religious activities. *Id.*

Accordingly, the BCCF Defendants' Motion is **granted** as to the RLUIPA and free exercise claims asserted in Claim Five, and these claims are **dismissed.**

> **vi.    Claim Six**

To the extent that Plaintiff alleges in Claim Six that lockdowns Defendants Williams and Trani instituted or enforced due to the COVID-19 pandemic violated his free exercise or RLUIPA rights because he could not practice his religion on the faith grounds (Amended Complaint [#66] at 21-23), this portion of Claim Six was denied as moot in Section III.B, *supra*. Plaintiff also alleges, however, that even after the COVID-19 restrictions on access to the faith grounds were lifted he was denied access to the faith grounds, and that this access is required so that he can use fire to cleanse his spirit and

ask for protection.  *Am. Compl.* [#66] at 22.  Thus, Plaintiff avers that Defendant Hestand manipulated the schedule so that Plaintiff's unit did not get access to the faith grounds, and that religious ceremonies were then suspended due to another lockdown from a new COVID-19 variant.  *Id.*, *see also* 23-24.  Plaintiff alleges as a result that he has been denied access to the faith grounds to practice his religion for a total of 24 months, or a total loss of 122 ceremonies.  *Id.*

The Court notes the only Defendant who remains in this claim in connection with the access to faith grounds after the initial COVID-19 restrictions were lifted is Defendant Hestand.  As to that Defendant, the Court finds that the BCCF Defendants did not address the free exercise or RLUIPA claims or contest that Plaintiff met the requirements of the claims.  The only argument that the BCCF Defendants make is that Plaintiff attributed his inability to access the faith grounds during COVID-19 to policies of the Governor and CDOC employees, and that Plaintiff did not allege any of the BCCF Defendants were involved in the creation of these policies.  *BCCF  Mot.* [#79] at 13-14.  This argument is moot since the remaining claim involves the alleged actions of Defendant Hestand after the COVID-19 restrictions were lifted.

Accordingly, as to the allegations in this claim that are not moot, the Motions to Dismiss are **denied** as to the free exercise and RLUIPA claims asserted in Claim Six.

### 2.  The Retaliation Claim (Claim Seven)

Claim Seven alleges violations of the First, Eighth, and Fourteenth Amendments. The Court addresses only the alleged First Amendment violation in this section, which it

construes as a First Amendment retaliation claim.[21]   Plaintiff alleges that he has been retaliated against because of his filing of grievances and this lawsuit.  *Am. Compl.* [#66] at 23-29.   The Amended Complaint asserts retaliation both through Code of Penal Disciplinary ("COPD") charges being instituted against him and through other alleged retaliatory actions.

The Court first addresses the retaliation claim in connection with COPD charges. Thus, Plaintiff alleges that BCCF Defendants Hestand and Casebolt, who affirmed to Plaintiff that they were aware of the lawsuit, refused to allow Plaintiff and other Native Americans to go to the faith grounds, even though the COVID-19 restrictions had been lifted.  *Id.*  Instead, they ordered Plaintiff to go back to his housing unit.  *Id.*  When Plaintiff refused, disciplinary action was taken by these Defendants as well as BCCF Defendants Cox and Archuleta.  Further, Plaintiff alleges that he received a COPD charge by BCCF Defendants Arrasmith and Dockter for disobeying a lawful order by Hestand and Casebolt, despite the fact that Hestand's and Casebolt's reports were later found to be false.  *Id.* at 24-26.  Plaintiff alleges he later overheard a conversation between Arrasmith and Dockter as to the retaliation plot against Plaintiff.  Nonetheless, Plaintiff's appeal of this charge was denied.  *Id.* at 26-27.

Plaintiff further alleges at a later time that BCCF Defendant Holland inquired if Plaintiff was still pursuing his lawsuit, to which Plaintiff responded affirmatively.  44 days later, Plaintiff received a COPD from Holland for which Plaintiff was found guilty by

---

21  To the extent Claim Seven asserts an Eighth Amendment or a due process violation, these claims are discussed further below.

Defendants Arrasmith and Dockter.  *Id.* at 27.  Plaintiff asserts he overheard Arrasmith and Dockter saying there was not enough evidence but that they had their "orders".  *Id.* Plaintiff's appeal of this charge was denied by Carson and Saldana who allegedly "conspired" as to this denial, and Plaintiff alleges that the appeal was not reviewed as required by policy and state law.  *Id.* at 28.  Finally, Plaintiff avers that Arrasmith, Dockter, Carson, and Saldana "conspired together to try and give [Plaintiff] additional security points so [that he] would be transferred from BCCF[,]" *id.*, which the Court infers is related to the COPD charge from Holland and the appeal of that charge  *Id.*

The BCCF Motion [#79] argues that this portion of Plaintiff's retaliation claim is precluded by *Heck v. Humphrey*, 512 U.S. 477 (1994), because it directly challenges his COPD convictions.  The Motion [#79] asserts that any determination by the Court that the COPD charges were retaliatory would invalidate those convictions.  *Id.* at 16.  The Motion [#79] further notes that Plaintiff has admitted that he was found guilty of these convictions and that they were affirmed on appeal.  *Id.* (citing *Am. Comp.* [#66] at 26, 28).

Turning to the analysis, the Supreme Court in *Heck* held that a prisoner cannot bring a § 1983 claim that would "render invalid" or "necessarily imply the invalidity of" a criminal conviction until the conviction has been invalidated.  512 U.S. at 486-87.  This *Heck* rule also applies to a claim challenging prison disciplinary proceedings when the alleged unconstitutional conduct could support a core habeas claim.  *Marshall v. Milyard*, 415 F. App'x 850, 854 (2011).  "On the other hand, a § 1983 claim remains available if 'success in the action *would not necessarily* spell immediate or speedier release for the prisoner[.]'"  *Id.* (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81, 83-84 (2005)).

Plaintiff asserts that he does not challenge or ask the Court to overturn his COPD convictions; instead, "the convictions are merely used to establish facts about the retaliatory motives of the Defendants." *Resp. BCCF Mot.* [#83] at 3. That is not, however, the dispositive inquiry. Instead, the Court must determine if this portion of Plaintiff's retaliation claim, if successful, would necessarily invalidate the convictions. *Heck*, 512 U.S. at 486-87. The Court finds that it would, and that this portion of the retaliation claim must be **dismissed without prejudice** because it is precluded by *Heck*. *Fottler v. United States*, 73 F.3d 1064 (10th Cir. 1996). The Tenth Circuit has held that retaliation claims involving convictions on charges with sanctions such as a loss of good time credits as alleged by Plaintiff (Amended Complaint [#66] at 28, ¶ 218) are precluded by *Heck*. *Brown v. Cline*, 319 F. App'x 704, 705-06 (10th Cir. 2009) ("Plaintiff's claims that the disciplinary reports against him were false and retaliatory and that the . . . hearing was conducted improperly are claims that necessarily implicate the validity of the disciplinary charges and the sanctions imposed, including the loss of good-time credits" and are barred by *Heck)*; *see also Johnson v. Little*, No. 17-cv-02993-RBJ-NRN, 2019 WL 630346, at *5 (D. Colo. Feb. 13, 2019); *Allmon v. Wiley*, No. 08-cv-01183-MSK-CBS, 2011 WL 4501941, at *8 (D. Colo. Aug. 25, 2011).

The Court now turns to the remaining portion of Plaintiff's retaliation claim. Plaintiff avers that he was approached by Defendant Salazar and threatened with a COPD charge if he continued to file grievances on behalf of the Native American community of BCCF. *Id.* at 23, ¶ 167. There is no allegation that a COPD charge was ever filed. Plaintiff further avers that after filing the lawsuit, "Defendants became fully aware that they were being

-48-

sued . . . by the responses their counsel began to file in the Court[,]" including motions to dismiss.  *Id.* at 23.  Plaintiff alleges that Defendants Hestand and Cox then retaliated against him by removing Sac and Fox language materials from the Chaplain's office that Plaintiff had paid for and was translating.  *Id.* at 27.  Plaintiff also alleges retaliation by Defendants Hestand and Carson through their manipulation of the schedule so that Plaintiff's unit could not go to the faith grounds.  *Id*. at 28.  Finally, Plaintiff alleges that he was told by Defendant Britton that he was no longer allowed to wear his eagle feather head wear, even though the restriction on wearing religious head gear without a cap over them had been lifted.  *Id.* at 29.  The directive from Britton was allegedly ordered by Defendant Arrasmith.  *Id*.  Britton also allegedly told Plaintiff that if he continued wearing the feathers, they would be confiscated.  *Id.*  Plaintiff avers that both Britton and Arrasmith had seen Plaintiff wearing eagle feathers on multiple occasions but suddenly chose to deny him this right as retaliation for filing grievances and a lawsuit.

Turning to the Court's analysis, "'[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149  F.3d 1140, 1144 (10th Cir. 1998) (quotation omitted).  "'This principle applies even where the action taken in retaliation would be otherwise permissible.'"  *Id.* (quotation omitted).  To state a First Amendment claim for retaliation, a plaintiff must allege: (1) that he was engaged in constitutionally protected activity; (2) that the actions in question caused the individual to suffer an injury "that would chill a person of ordinary firmness from continuing to engage in that activity[,]" and (3) that the adverse actions were substantially motivated as a response to the individual's exercise of constitutionally

protected conduct.  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007).

In regard to the third element, a plaintiff must allege facts that plausibly support a finding

that 'but for' the retaliatory motive, the incidents to which he refers would not have taken

place."  *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990).  In other words, a

prisoner must "'allege specific facts showing retaliation because of the exercise of the

prisoner's constitutional rights.'"  *Peterson*, 149 F.3d at 1144 (quoting *Frazier v. Dubois*,

922 F.2d 560, 562 n. 1 (10th Cir. 1990)).  As this Court noted, "Tenth Circuit cases 'allow

an inference' of whether the defendants' actions were causally connected to the protected

conduct where the evidence shows '(1) the defendants were aware of the protected

activity; (2) the plaintiff directed his complaint to the defendants' actions; and (3) the

alleged retaliatory act 'was in close temporal proximity to the protected activity.'"  *Handy

v. Cummings*, No. 11-cv-00581-WYD-KMT, 2013 WL 1222415, at *6 (D. Colo. 2013)

(quotation omitted; *see also Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)).

The BCCF Motion [#79] asserts that Plaintiff's claim of retaliation based on the

events unrelated to the COPD charges is insufficient to state a cognizable claim because

Plaintiff fails to show that, but for the alleged retaliatory motive of any of the BCCF

Defendants, he would have been treated differently.  *Id.* at 15.  The Motion [#79] argues

that Plaintiff's litigation efforts have ranged over a lengthy period, and the timing alone

belies Plaintiff's "conclusory and speculative claims of retaliation."  *Id*.

The Court finds as to the averments against Defendant Salazar that Plaintiff has

plausibly alleged that he was (1) engaged in constitutionally protected activity through the

filing of grievances; and (2) that Salazar's threat explicitly allows the Court to infer that,

but for the grievances filed in connection with Plaintiff's Native American faith, the threat of charges would not have occurred. The Court also finds that it may plausibly be inferred at this stage of the litigation that the threat Plaintiff would be charged with a COPD violation if he continued to file grievances in connection with his faith would "chill a person of ordinary firmness from continuing to engage in that activity." *See Handy*, 2013 WL 1222415, at *9 (finding that threat to place Plaintiff on a segregation order "may arguably be sufficient to chill an inmate of ordinary firmness"). Defendants have not argued to the contrary. Accordingly, the Motions to Dismiss are **denied** as to the allegations of retaliation against Salazar.

However, as to the allegations against Hestand, Cox, and Carson in regard to removing the language materials that Plaintiff had paid for and manipulating the faith grounds schedule so that Plaintiff's unit could not go, the Court finds that these allegations are not sufficient to state a retaliation claim. Plaintiff has not alleged facts from which the Court can plausibly infer that these activities would not have occurred but for the alleged retaliatory motive. For example, there are no allegations that permit the Court to infer a causal connection because Plaintiff has not averred that the alleged retaliatory acts were in close temporal proximity to the protected activity. *Handy*, 2013 WL 1222415, at *6.

Based on the foregoing, the BCCF Motion [#79] is **granted in part and denied in part** as to the retaliation claim. The Motion [#79] is **denied** as to the allegations against Salazar, but **granted** as to the remainder of the claim.[22] Further, as this is the only claim

---

22 The CDOC Motion [#76] addressed this claim only by asserting that there were no allegations against the CDOC Defendants. *Id.* at 13. While this appears to be true, the argument need not be addressed because the only remaining Defendant in the claim is a BCCF Defendant.

asserted against BCCF Defendants Casebolt, Arrasmith, Dockter, Saldana, Holland, Britton, Cox, and Carson, these Defendants are **dismissed** from the case.

### 3.    The Equal Protection Claims

As the Court noted in its Order [#55] on the prior Motions to Dismiss, the Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  *Id.* at 25 (quoting U.S. Const. amend. XIV, § 1.)  Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim, the inmate "must establish that others, 'similarly situated in every material respect' were treated differently."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quotation omitted).

Plaintiff's equal protection claims in the initial Complaint [#1] were dismissed without prejudice in the Court's prior Order [#55], as it found that Plaintiff merely alleged that his Native American faith was treated differently from Judeo-Christian faiths, or that other faiths were treated more favorably.  *Id.*  Plaintiff did not aver that other inmates who were similarly situated in every respect to Plaintiff were treated differently.  *Id.*  The Court concluded that "Plaintiff's conclusory allegations of equal protection violations, without any allegations showing that similarly situated inmates were treated differently, are not sufficient to state a claim."  *Id.* at 25-26.  The Court is now called upon to determine whether the claims as amended by Plaintiff in his Amended Complaint [#66] have cured the deficiencies noted as to the equal protection claims in the initial Complaint [#1].

Before addressing the specific claims, the Court first notes that Plaintiff's equal protection claims are incorporated into his claims alleging violations of the First Amendment Free Exercise Clause and RLUIPA, and it is not always clear to what extent Plaintiff is asserting an equal protection claim.  Nonetheless, as best the Court can tell, the following represents Plaintiff's equal protection claims.

### a.   Claim One

In Claim One, Plaintiff bases his equal protection claim on two things: (1) the allegation that Defendants recognize other faiths as individual faiths and do not require them to practice other religions, unlike Plaintiff who has been forced to adhere to Lakota religious practices because of Defendants' belief that "all Indians are the same[,]" and (2) "other faiths" are allowed to wear religious head and neck wear outside their cells, but he is only allowed to do so in his cell or at approved religious gatherings.  *Am. Compl.* [#66] at 12, ¶¶53; 14, ¶ 72.  Plaintiff further avers in regard to the neck wear (a choker that Plaintiff is allegedly being denied) that AR Form 800-01G provides appropriate neck wear for every faith but Native Americans.  *Id.* at ¶ 64.

The CDOC Motion [#76] asserts as to the equal protection claim in Claim One that Plaintiff has failed to allege with any factual specificity that similarly situated individuals were treated differently.  *Id.* at 23-24.  The Court agrees, and finds that Plaintiff did not cure the deficiencies noted in connection with his initial Complaint [#1].

Thus, the Court finds that Plaintiff has not met his burden to allege specific facts that allow the Court to plausibly infer that the faiths (1) which were recognized by the facility and were not forced to practice another religion, or (2) were permitted to wear head

and neck wear when Plaintiff was not, were similarly situated in all material aspects to Plaintiff's faith, let alone that they were similarly situated in every material respect. *See Collins*, 656 F.3d at 1220 (finding in case where property owners alleged that they had been singled out for enforcement of environmental laws that it was insufficient "to simply allege that other, unidentified properties have 'comparable' or 'similar' conditions—the claim must be supported by specific facts plausibly suggesting the conditions on the properties and the properties themselves are similar in all material respects"). Further, as the CDOC Defendants highlight, Plaintiff has failed to allege who the individuals of other faiths are who were allowed to wear religious head and neck wear, what specifically they were allowed to wear, and how they are similarly situated to him; thus, he has not identified any similarly situated individuals for the purposes of his equal protection claim. *See Rudnick v. Raemisch*, No. 16-cv-02071-RM-KLM, 2018 WL 1084377, at *6 (D. Colo. Feb. 27, 2018) (holding that "[i]n order to state an equal protection claim, Plaintiff must allege facts demonstrating that he intentionally was treated differently from similarly situated inmates[;]" and [t]he mere fact that they are also inmates does not meet the 'similarly situated' requirement."). Plaintiff's allegations are conclusory as to this requirement. Accordingly, the Court finds that the CDOC Motion [#76] should be **granted** as to this issue, and the equal protection portion of Claim One is **dismissed**.

### b. Claims Two and Four and Other Equal Protection Claims

In Claims Two and Four, Plaintiff asserts an equal protection claim related to the firewood and herbs he claims to need to practice his religion. *See, e.g., Am. Compl.* [#66] at 16, ¶ 95, 19-20, ¶¶ 127-35. In Claim Two, Plaintiff alleges that Christian groups were

allowed to use electricity for their religious services, and that other faiths were allowed to use water for their ceremonies or were provided with meals, facilities, and materials required for their faiths. *Id.* at 16, ¶¶ 92-94, 96. By contrast, as a Native American, Plaintiff alleges that he is forced to pay for the materials (firewood and herbs) required for the practice of his religion. *Id.*, ¶ 95. Additionally, Plaintiff alleges that federal funds have been used to develop other religious and non-religious programs, but no funds have been used to promote Native American beliefs, including funding for firewood and herbs needed in religious ceremonies. *Id.* at 16-17; *Response* [#90] at 24. Plaintiff further asserts that "[t]o provide Christian faiths with connections to outside communities and then deny Eaves based on the Colorado Constitution which states it can discriminate against him as an 'Indian'" violates the Equal Protection Clause. *Response* [#90] at 24.

As to Claim Four, Plaintiff alleges that wood purchased is considered donated, that other faiths were allowed to use firewood donated into a common fund, and that on some occasions the firewood ran out as a result. *Am. Compl.* [#66] at 18, ¶¶ 129-131. Plaintiff alleges that these other faiths do not have to purchase firewood for their ceremonies; instead, the facility forces Plaintiff to purchase the firewood for his ceremonies which firewood is then "donated" to other faiths. *See Response* [#90] at 25.

Regarding the allegations in Claims Two and Four, the CDOC Motion [#76] argues that Plaintiff has only identified inmates that (1) belong to other religions and (2) engage in religious practices that require the use of certain materials or particular diets. *Id.* at 25 According to the CDOC Defendants, these characteristics do not establish that the inmates in these groups (and their faiths) are similarly situated in every material respect

to Plaintiff and the allegations as to his faith.  *Id.* at 25.  The Court agrees, and finds for the same reasons discussed as to Claim One that Plaintiff has failed to state a plausible equal protection claim in Claims Two and Four.  Moreover, as the CDOC Defendants note, Plaintiff actually alleges in part in Claim Four that he was *not* treated differently from the Asatru, North Western European Paganism, and Wiccan faiths who, like Plaintiff, had to use firewood obtained from a common fund.  *Id.* (citing *Am. Compl.* [#66] at 18, ¶¶ 129-131).  Consequently, the CDOC Motion [#76] is **granted** as to the equal protection claims in Claims Two and Four.[23]

Finally, to the extent Plaintiff may intend any other claim to assert an equal protection claim, the claims also fail for the same reasons.   Accordingly, all equal protection claims are **dismissed**.

### 4.      Eighth Amendment Claim

Plaintiff also purports to state a claim under the Eighth Amendment.  *See Am. Compl.* [#66] at 23.  The CDOC Motion [#76] argues that this claim should be dismissed because Plaintiff pleads no facts in his Amended Complaint that pertain to causes of action under the Eighth Amendment.  *Id.* at 26.  Plaintiff clarifies that he asserts his Eighth Amendment claim only against CC and BCCF employees.  *Resp. CDOC Mot.* [#90] at 28.

---

23   Additionally, to the extent Plaintiff alleges in Claim Two that federal funds have been used to develop other programs, including non-religious programs such as "Gender, Race, Ability, Awareness, Culture and Equity") ("GRAACE") and religious programming such as the Christian "college" at Limon Correctional facilities, but no funds have been used to promote Native American beliefs (Amended Complaint [#66], ¶¶ 96-101), Plaintiff fails to state that the individuals who benefit from these programs are similarly situated in all material respects.  For instance, Plaintiff is not an inmate at Limon, and there is no allegation that these programs exist at BCCF.

Plaintiff does not articulate, however, what facts support his Eighth Amendment claim, which specific Defendants were involved in the alleged violations, or how Defendants exhibited deliberate indifference in connection with the actions at issue. *See, e.g., Barney v. Pulsipher*, 149 F.3d 1299, 1310 (10th Cir. 1998) (noting that the deliberate indifference test requires both an objective test, whereby the alleged deprivation must be sufficiently serious, and a subjective test, requiring that the prison official have a sufficiently culpable state of mind). Accordingly, to the extent Claim Seven asserts an Eighth Amendment claim, the Motions to Dismiss are **granted**. This claim is **dismissed** for failure to state a claim as well as the failure to allege the personal participation of any Defendants.

### 5.    Due Process Claims

Plaintiff states in his Response [#90] to the CDOC Motion that he raised due process claims in Claims One, Two, and Four. *Id.* at 22. Plaintiff avers that as an Indian, he was given greater due process protections by statute. *Id.* (citing Colo. Rev. Stat. § 17-42-102) (recognizing that "serious problems in the practice of religious freedom persist. . ., particularly for American Indians who are incarcerated, and stating that inmates must be given access to "[i]tems and materials utilized in religious ceremonies").[24] Plaintiff further avers as to Claims Two and Four that he was denied due process by the Faith and Citizen Programs in connection with "'maintain[ing] communication with faith communities and approv[ing] donations . . . of materials for use" in Plaintiff's faith, which is allegedly required by state statute. *Id.* at 25. According to Plaintiff, this creates a liberty

---

[24] Plaintiff's reference to this statute cannot serve as the predicate for his claims because a § 1983 claim cannot be based on a violation of a state statute. *Rea*, 2010 WL 5575163, at *3-4; *see also Reply CDOC Mot.* [#97] at 10-11.

interest in the materials.  *Id.*  Further as to Claim Four, Plaintiff's Response [#90] refers to the "shocks the conscience" standard of a substantive due process claim and alleges that the Governor, Williams and Trani "spent a considerable amount of time planning a deliberate way for the State to continue its responsibility under the Constitution and statue [sic] to develop a policy that would allow it not to provide materials to Eaves, thereby denying his ability to adhere to his faith."  *Id.* at 25-26.  According to Plaintiff, he grieved the issues related to the deprivation of his due process rights and even wrote to the Governor, that Defendants had a realistic period of time to deliberate, and that they chose to deny Plaintiff's rights.  *Id.* at 23, 26.

As the CDOC Defendants highlight, "nowhere in Claims One, Two, or Four does Eaves include any allegations that he was denied a liberty interest or that CDOC Defendants' actions shocked the conscience."  *See Reply CDOC Mot.* [#97] at 16 (citing *Am. Compl.* [#66] at 7-17, 19-20).  Plaintiff also makes no mention of due process.  *Id.* While Plaintiff makes a passing reference to the Fourteenth Amendment in Claims Two and Seven (*id.* at 16-17, ¶ 101; 28 ¶ 227), he does not reference due process or the elements of such a claim therein, nor does he allege facts explaining how his substantive or procedural due process rights were violated.  As such, the Amended Complaint contains no plausible due process claims.  Moreover, the CDOC Defendants are correct that Plaintiff cannot seek to amend his complaint by "alluding to facts that have not been alleged, or by suggesting violations that have not been pled."  *Truby v. Denham*, No. 16-cv-02764-CMA-CBS, 2017 WL 8942573, *2 (D Colo. Oct. 16, 2017); *see also Jojola v.*

-58-

*Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (holding that a court is limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint).

Based on the foregoing, the CDOC Motion [#76] is **granted** as to this issue, and any due process claims in the Amended Complaint [#66] are **dismissed**.

### 6. Plaintiff's Requests for Declaratory and Injunctive Relief

Finally, the Court addresses Plaintiff's requests for injunctive and declaratory relief. Plaintiff seeks the following: (1) to allow him to possess personal sacred objects; (2) a recognition that beadwork is part of religious expression; (3) to allow him to embellish his medicine bag and headband; (4) to allow him to wear religious headwear and neckwear; (5) to allow Plaintiff to develop communication with the Native American faith communities; (6) to rescind the Colorado Constitution; (7) to allow Plaintiff to spiritually cleanse his cell; (8) for Defendants to stop "donating" materials belonging to the Native American faith group to other faiths; (9) for Defendants to provide a detailed account statement of who has donated and how much to the Native American faith fund for the past seven years; (10) for Defendants to provide a detailed account statement of the expenditures from the Native American faith fund for the past seven years; (11) for Defendants to develop a plan to allow Plaintiff access to the faith grounds at least once a week during lockdowns; and (12) to stop the retaliation against Plaintiff. *Id.* at 31.  The CDOC Defendants argue that certain of these requests should be dismissed as improper or because the CDOC Defendants do not have power to effect the relief.  *CDOC Mot* [#76] at 7-10.

Before beginning its analysis, the Court notes that "[a] party seeking… injunctive relief *must establish a relationship* between the injury claimed . . . and the conduct asserted in the complaint."  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010) (internal citations omitted; emphasis added); *see also Koehn v. Denham*, No. 17-CV-00234-KMT, 2018 WL 10247016, at *1 (D. Colo. Jan. 24, 2018) (denying injunctive relief because the request at issue "is not related to constitutional violations alleged in" the complaint).  It is thus well-settled in the Tenth Circuit that prospective relief "must be narrowly tailored to remedy the harm shown."  *Garrison v. Baker Hughes Oilfield Ops., Inc.*, 287 F.3d 955, 962 (10th Cir. 2002); *see also* 18 U.S.C. § 3626(a)(1) (stating PLRA requirements to grant prospective relief).

Further, "[d]eclaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit."  *Rio Grande Silvery Minnow*, 601 F.3d at 1109.  When applying the mootness doctrine in the context of considering a declaratory judgment, there must be a "settling of some dispute which affects the behavior of *the defendant toward the plaintiff*."  *Jordan,* 654 F.3d at 1025.  "That a declaration might guide *third parties* (*i.e.,* those not parties to the lawsuit) in their future interactions with a plaintiff is insufficient."  *Id.* at 1026.

The CDOC Motion [#76] asserts that several of Plaintiff's requests fail to meet the above requirements.  The Motion [#76] points to Plaintiff's requests for injunctive relief to "rescind the Colorado Constitution so it can no longer discriminate against 'Indians,'" "stop the 'donating' of materials specifically belonging to the Native American faith group to

other faiths," and provide a "detailed account statement" of donations to and funds expended from the Native American faith fund for the past seven years. *Id.* at 8.

The Court **grants in part and denies in part** the CDOC's argument as to the above requests. First, the Court agrees that the request to rescind the Colorado Constitution so it can no longer discriminate against Indians is overbroad and is not narrowly tailored to address the alleged infringements upon Plaintiff's ability to exercise his religion. Moreover, Plaintiff has not alleged or pointed to any authority indicating that any of the CDOC Defendants or the Governor have authority to rescind the Colorado Constitution. *See Peterson*, 707 F.3d at 1206-07 (holding that an official capacity defendant must have some responsibility or authority to perform the injunctive relief being sought).[25] Accordingly, the CDOC Motion [#76] is **granted** as to this issue, and the request to rescind the Colorado Constitution is **dismissed**.

As to the requests for detailed account statements related to the Native American faith fund, the Court found previously in Claim Five that Plaintiff has not alleged that either obtaining or the failure to obtain such an accounting from Defendants substantially burdens his sincerely held religious beliefs or the exercise of his religion under the free exercise clause or RULUIPA. Moreover, despite an AR cited by Plaintiff (Response [#90] at 8), there is no indication that the Defendants being sued are authorized or have the ability to provide such an accounting. *See also Reply CDOC Mot.* [#97] at 3. The Court also agrees with the CDOC Motion [#76] that Plaintiff's request for a declaration of duties

---

25 Plaintiff's conclusory statement in his Response [#90] that the Governor has the authority to rescind the Constitution, *id.* at 6-7, is not entitled to a presumption of the truth.

under the First, Eighth, and Fourteenth Amendment to be protected from retaliation for asserting his religious rights (*id.* at 8-9 and n. 4) fails to satisfy the requirement that a request be narrowly tailored to the alleged harm.  Further, the request may result in a retrospective opinion that Plaintiff was wrongfully harmed.  *See Jordan,* 654 F.3d at 1025.  Finally, the Court finds as to Plaintiffs' request that Defendants be required to "develop communication with the public Native American faith communities so items and materials are available for donation to the Native American faith group" (Amended Complaint [#66] at 31), that there is no indication that this request would have any practical effect on the disputes at issue. *See CDOC Mot.* [#76] at 9.  These requests are also **dismissed.**

However, the Court finds that the requests to (1) "stop the 'donating' of materials specifically belonging to the Native American faith group to other faiths[,]" and (2) to "[r]ecognize that beadwork is not a 'hobby' for a Native American but is part of religious expression[,]" are not overbroad, and appear to be narrowly tailored to Plaintiff's RLUIPA and free exercise claims related to the beads, firewood and herbs.  Accordingly, the CDOC Motion [#76] is **denied** to the extent it requests dismissal of these requests.

E.    **Dismissal With or Without Prejudice**

Ordinarily the dismissal of a *pro se* claim under Rule 12(b)(6) should be without prejudice.  *Gee*, 627 F.3d at 1186; *Gabriel v. Emergency Med. Specialists, P.C.*, No. 16-cv-00051-RBJ-CBS, 2016 WL 8310097, at *8 n. 13 (D. Colo. Nov. 1, 2016).  However, dismissal *with* prejudice is appropriate where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.  *Garcia v. Webster*, No. 09-cv-03024-CMA-KLM, 2011 WL 109076, at *1 (D. Colo. Jan.

-62-

11, 2011) (citing *Oxendine v. Kaplan*, 241 F.2d 1272, 1275 (10th Cir. 2001)).   Here, Plaintiff has already been given the opportunity to amend his complaint, and the Court finds it is obvious he cannot prevail on the facts he has alleged as to the claims that were dismissed.   Accordingly, while some of Plaintiff's requests for relief or claims that are jurisdictional in nature have been dismissed without prejudice, the claims that the Court has found should be dismissed on the merits are dismissed with prejudice.

### IV.  Conclusion.

Based upon the foregoing,

IT IS **ORDERED** that the Motions to Dismiss [#73, #76, #79] are **GRANTED IN PART AND DENIED IN PART** as explained in this Order.   Thus,

IT IS **ORDERED** that the Motions to Dismiss are granted as to the official capacity claims asserted against the Governor and the CDOC Defendants under 42 U.S.C. § 1983 for monetary damages, and these claims are **DISMISSED WITHOUT PREJUDICE.**   .

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED** as to the argument that the individual capacity claims against the Defendants under RLUIPA for monetary damages are barred, and these claims are **DISMISSED WITH PREJUDICE.**

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **DENIED** as premature as to the argument that the official capacity claims under 42 U.S.C. § 1983 against the BCCF Defendants should be dismissed.

IT IS FURTHER **ORDERED** that the Governor's Motion [#73] is **DENIED** as to the argument that the Eleventh Amendment bars Plaintiff's federal constitutional claims for equitable relief against the Governor.

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART** as to the mootness argument. The Motions are **GRANTED** as to claims regarding alleged lack of access to the faith grounds during the COVID-19 restrictions, and such claims are **DISMISSED WITHOUT PREJUDICE.** The Motions are **DENIED** as to the other mootness arguments.

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **DENIED** as to the arguments that Plaintiff's request for damages for emotional distress are barred under the PLRA and that the BCCF Defendants are not necessary parties.

. IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED** as to Plaintiff's request in his Prayer for Relief for joint and several liability, and this request is **DISMISSED.**

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED** as to the First Amendment free exercise and RLUIPA claims. Specifically, the Motions are **DENIED** as to the First Amendment free exercise and RLUIPA claims asserted in Claims One, Three, Four, and Six. The Motions to Dismiss are **GRANTED** as to the First Amendment free exercise and RLUIPA claims asserted in Claims Two and Five, and these claims are **DISMISSED WITH PREJUDICE**,

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED** as to the religious discrimination claims in Claims Two, Four, or any other claim that may allege religious discrimination, and these claims are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART** as to Claim Seven alleging retaliation. Specifically, the Motions

to Dismiss are **DENIED** as to the allegations against Defendant Salazar, but **GRANTED** as to all other allegations of retaliation.  To the extent the retaliation claim is barred by *Heck*, this portion of Claim Seven is **DISMISSED WITHOUT PREJUDICE.**  The remaining portion of Claim Seven subject to dismissal is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED** as to the equal protection claims, Eighth Amendment claim, and due process claims, and these claims are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER **ORDERED** that the Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART** as to the argument that certain of the injunctive and declaratory requests are overbroad or otherwise subject to dismissal.  *See Section  III.D.6, supra.*

IT IS FURTHER **ORDERED** that Defendants Casebolt, Arrasmith, Dockter, Saldana, Holland, Britton, Cox, and Carson are **dismissed** from the case because there are no remaining claims against them.

Dated: March 29, 2023

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge