IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:21-cv-01269-KAS**

RODNEY DOUGLAS EAVES,

    Plaintiff,

v.

JARED POLIS, et al.,

    Defendants.

---

**SCHEDULING ORDER**

---

**1. DATE OF CONFERENCE
AND APPEARANCES OF COUNSEL AND PRO SE PARTIES**

The Scheduling Conference occurred on June 11, 2024. Stephanie Frisinger of the firm MAXTED LAW LLC, 1543 Champa Street, Suite 400, Denver CO 80202, appeared on behalf of the Plaintiff.

Edmund Kennedy [Andrew Ringel, and Katherine Hoffman] of the firm HALL & EVANS, LLC, 1001 Seventeenth Street, Suite 300, Denver CO 80202, appeared on behalf of the Bent County Correctional Facility Defendants (Defendants Jerry Roark, David Hestand, and Steven Salazar).

Philip Barrett [and Mark Lockefeer] of the Office of the Colorado Attorney General,

1

Ralph L. Carr Judicial Building, 1300 Broadway, 10th Floor, Denver CO 80203, appeared on behalf of the Colorado Department of Corrections Defendants (Defendants Dean Williams, Travis Trani, Gypsy Kelso, Anthony DeCesaro, Marshall Griffith, Jason Smith, Andre Stancil, and Matt Hansen).

In light of the discovery stay as to Governor Polis, counsel for Governor Polis did not attend the Rue 26(f) conference.

## 2. STATEMENT OF JURISDICTION

Plaintiff's claims in this case arise under 42 U.S.C. §§ 1983, 1988, and 2000cc. Plaintiff invokes this Court's jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202.

Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b), as all relevant alleged acts and omissions occurred in Colorado.

## 3. STATEMENT OF CLAIMS AND DEFENSES

a. **Plaintiffs:**

Faith is an important part of Mr. Eaves's rehabilitation in a prison setting. Faith gives him the drive to return to society from prison as a better man. BCCF Defendants and CDOC Defendants denied, and continue to deny, Mr. Eaves's right to practice his faith.

Claim 1: BCCF and CDOC Defendants denied Mr. Eaves his request to personally possess sacred items[1] for his personal religious ceremonies and practices. In 2020 and 2021, Mr.

---

[1] This includes denial of a personal Pipe used to make personal prayers to Ketchemanetowa, the Sac and Fox Creator; a Rattle made of the Sister Gourd containing 144 select stones of quartz used to honor the Spirits; a Flute used to connect with feminine Spirits and powers; the Mother Drum (Tewehikana) used to connect with the greater Sac and Fox community; the personal Drum (Ahkohkwa) used to connect with past relatives; the Ribbon shirt and dance bells used to

Eaves requested several times the right to possess personal sacred items to practice personal prayer ceremonies in adherence to Sac and Fox ways. His request was denied, first by BCCF Defendants, and then CDOC Defendants. Without possession of personal sacred items to practice personal prayer, Mr. Eaves is denied his connection with the Spirits and with Ketchemanetowa, the Sac and Fox Creator. Miscommunication with the Spirits caused by his denial of these personal sacred objects creates confusion in his daily life; denies him of important spiritual connections with Ketchemanetowa, Akiki, the Spirits, his Sac and Fox community, and his past relatives; and causes Ketchemanetowa to bring violence upon his physical and spiritual being and Mr. Eaves's premature death as well as the premature death of his loved ones. Claim 1 survives as to the First Amendment and RLUIPA claims.

Claim Two: This claim has been dismissed in its entirety.

Claim Three: Mr. Eaves submitted a request to Defendant Kelso to amend CDOC Administrative Regulation 800-01 to allow him to Wazila, or spiritually cleanse, his living space with sage smoke and cedar burnt inside his unit cells and to embellish his headband and medicine bag with beads and stones. First, without the ability to Wazila his living space, Mr. Eaves cannot cleanse his living space of bad and tortured spirits, which prevents Mr. Eaves from obtaining good sleep and subjects him to theft and harm in his physical and spiritual worlds. The ability to Wazila his living space invites good and positive spirits into the living space and

---

connect with Akiki (Earth), the Sac and Fox Grandmother; and the choker necklace (Napitakani) used to remind the wearer of the speech that comes from the wearer's mouth. It also includes denial of the ability to wear Eagle feathers (Ketiwa Mikona). The Eagle (Ketiwa) carries the messages of Ketchemanetowa and delivers messages to the Spirits of Four Directions. The Ketiwa Mikona must be worn on the head in order to follow the directions of Ketchemanetowa.

provides rest and protection. Second, embellishing his headband and medicine bag with beads with certain patterns and colors provides protection for Mr. Eaves's spirit and body and invokes the powers given to him from Ketchemanetowa. Embellishing his headband and medicine bag with stones imparts Mr. Eaves with the knowledge of his oldest living relatives, as stones under the Sac and Fox faith are living beings. Defendant Kelso informed Governor Polis, Defendant Trani, and Defendant Williams of Mr. Eaves's requests, but did not consult with anyone in the Native American faith community to understand the importance of Mr. Eaves's request to practice his faith. Six months later, Defendant Williams and Governor Polis adopted a new AR that did not integrate Mr. Eaves's requirements to practice his faith. The CDOC Defendants therefore adopted a policy that denies Mr. Eaves's rights to practice his faith when there are less restrictive means available. Claim Three survives as to the First Amendment and RLUIPA claims.

<u>Claim Four</u>: Mr. Eaves donated money for the purchase of materials for religious ceremonies. Firewood and sacred herbs are necessary for religious ceremonies. The ceremonies require the use of fire and sacred herbs like sage, cedar, and Kinikinik. If firewood is unavailable, a ceremony cannot be conducted because of the importance of fire to heating stones used for sweat lodge ceremonies and to light the ceremonial Pipe and sacred herbs. Despite donating money for the purchase of firewood and sacred herbs, BCCF Defendants took the firewood for personal use or for use by other faiths. As a result, Mr. Eaves did not have the materials necessary to practice his religious ceremonies and he was denied the ability to practice his faith.

Claim Five: This claim has been dismissed in its entirety.

Claim Six: Mr. Eaves was denied access to faith grounds during and after the COVID-19 pandemic. Without access to faith grounds, Mr. Eaves could not use fire to cleanse his spirit or ask for protection from the Spirits during a very troubling time. Even after COVID-19 restrictions were lifted, Mr. Eaves could still not access faith grounds and was denied the ability to practice his faith. Specifically, Defendant Hestand would maliciously and purposefully schedule the unit Mr. Eaves lived in to access faith grounds the first week of the month, but would not obtain warden approval on the schedule until the second or third week of the month. Because of Defendant Hestand's actions, Mr. Eaves went an additional six months without access to faith grounds after the COVID-19 restrictions were lifted. Claim Six survives as to the First Amendment and RLUIPA claims. The COVID-19 denial of access claims have been dismissed as moot, but the denial of access claims after the COVID-19 restrictions were lifted survive.

Claim Seven: Defendant Salazar approached Mr. Eaves in 2020 and threated Mr. Eaves with Code of Penal Discipline (COPD) charges if Mr. Eaves continued to file grievances on behalf of himself and the Native American faith community at BCCF. Mr. Eaves was engaged in a constitutionally protected activity through filing grievances and Defendant Salazar

**BCCF Defendants:** BCCF Defendants deny that they are liable for any alleged constitutional violations and deny that they violated Plaintiff Rodney Eaves's constitutional rights in any manner, nor did they violate Plaintiff's rights under RLUIPA. BCCF Defendants incorporate and adopt their affirmative defenses contained in their Answer to Amended

Complaint [ECF 171] as if fully asserted herein.

**CDOC Defendants:** CDOC Defendants deny that they are liable for any alleged constitutional violations and deny that they violated Plaintiff Rodney Eaves's constitutional rights in any manner, nor did they violate Plaintiff's rights under RLUIPA. Some or all of Plaintiff's claims are moot. CDOC Defendants also assert that some or all of Plaintiff's claims are barred by the statute of limitations. Plaintiff is not entitled to the relief requested in his operative complaint. Plaintiff has been afforded all the rights, privileges, and immunities granted by the United States Constitution. CDOC Defendants' actions, applicable CDOC regulations, and state laws are supported by legitimate penological interests, goals, and objectives. CDOC Defendants may be entitled to assert qualified immunity and/or sovereign immunity. Plaintiff's claims may be barred or limited by the provisions of the Prison Litigation Reform Act ("PLRA"). Plaintiff's claims may also be barred in whole or in part by the doctrines of estoppel, res judicata, waiver, and/or laches. Defendants reserve the right to add additional defenses, which may become known upon the completion of additional discovery.

## 4.  UNDISPUTED FACTS

The following facts are undisputed:

1. The Colorado Department of Corrections (CDOC) is a department of the State of Colorado.

2. CDOC is the department that oversees the operation of the Colorado state prisons.

3. Mr. Eaves has been, at all relevant times, incarcerated in the custody of CDOC.

4. Mr. Eaves has been incarcerated since 2016.

5. Bent County Correctional Facility (BCCF) is a private prison run by CoreCivic.

6. Mr. Eaves was incarcerated at BCCF when he filed this lawsuit in May 2021 and remained incarcerated at BCCF until August 2023.

7. Defendant Dean Williams was the Executive Director of CDOC from January 19, 2019, until December 31, 2022.

8. Defendant Andre Moses Stancil is the current Executive Director of CDOC.

9. Defendant Travis Trani was the Deputy Executive Director of CDOC from March 18, 2019, to August 19, 2019.

10. Defendant Gypsy Kelso was the Faith and Citizens Administrative Designee of CDOC from January 1, 2020, to March 1, 2021.

11. Defendant Matt Hansen is the Deputy Executive Director of Prison Operations.

12. Defendant Marshall Griffith holds the title of Step III Grievances Responder at CDOC and held this title at all times relevant to this litigation.

13. Defendant Jerry Roark was the Warden at BCCF during the relevant time of this action.

14. Defendant David Hestand was the Chaplain at BCCF during the relevant time of this action.

15. Defendant Salazar was the Programs Administrative Head at BCCF, during the relevant time of this action.

## 5. COMPUTATION OF DAMAGES

   a. **Plaintiff**

Plaintiff claims all appropriate declaratory and injunctive relief; actual economic damages as established at trial (*i.e.*, religious property); compensatory damages, including but not limited to those for past and future emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses like Plaintiff's permanent loss of his sense of smell; nominal damages for the violations of his rights; punitive damages on all federal claims against Defendants as allowed by law in an amount to be determined at trial; issuance of an order mandating appropriate equitable relief; pre-judgment and post-judgment interest at the highest lawful rate; attorneys' fees; and any further relief as justice requires.

A more precise computation of Plaintiff's damages, to the extent Plaintiff's damages are subject to such computation, will be provided during the normal course of discovery and will be determined by a jury in its sound discretion following a presentation of the evidence at trial in this matter.

Punitive damages will be sought as authorized by law based upon the egregious nature of the conduct of the Defendants as set forth in the Complaint and the need to restrain such conduct in the future. Calculation of these damages and entitlements is premature and not susceptible to the type of calculation contemplated by Rule 26(a)(1). *See Smith v. Wade*, 461 U.S. 30 (1983); *Burrell v. Crown Cent. Petroleum*, 177 F.R.D. 376, 386 (D. Tex. 1997).

   b. **BCCF Defendants:** BCCF Defendants are not presently claiming any damages from Plaintiff. However, BCCF Defendants reserve their right to seek attorney's fees and costs

pursuant to applicable law.

c.  **CDOC Defendants:** CDOC Defendants are not presently claiming any damages from Plaintiff. However, CDOC Defendants reserve their right to seek attorney's fees and costs pursuant to applicable law.

### 6. REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

a.  The 26(f) conference occurred on May 13, 2024.

b.  Participating attorneys and party represented:

David Maxted and Stephanie Frisinger of the firm MAXTED LAW LLC, 1543 Champa Street, Suite 400, Denver CO 80202, appeared on behalf of the Plaintiff.

Edmund Kennedy, of the firm HALL & EVANS LLC, 1001 Seventeenth Street, Suite 300, Denver CO 80202, appeared on behalf of the Bent County Correctional Facility Defendants (Defendants Jerry Roark, David Hestand, and Steven Salazar).

Philip Barrett and Mark Lockefeer of the Office of the Colorado Attorney General, Ralph L. Carr Judicial Building, 1300 Broadway, 10th Floor, Denver CO 80203, appeared on behalf of the Colorado Department of Corrections Defendants (Defendants Dean Williams, Travis Trani, Gypsy Kelso, Anthony DeCesaro, Marshall Griffith, Jason Smith, Andre Stancil, and Matt Hansen).

c.  The parties agree Fed. R. Civ. P. 26(a)(1) disclosures will be made by June 7, 2024.

d.  Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1):

There is an eleven-day extension of time from the 14 days provided in Fed. R. Civ. P.

26(a)(1)(C) for parties to make initial disclosures.

   e. Statement concerning any agreements to conduct informal discovery: none.

   f. The parties agree to take reasonable steps to reduce unnecessary costs of discovery.

   g. The parties anticipate some discovery of electronically stored information ("ESI"). The parties will take steps to preserve ESI to the extent it is involved in discovery or disclosures, and to the extent feasible will exchange information in PDF format. The parties agree to use a Bates-labeling system to identify disclosures and discovery to reduce discovery costs. The parties further agree to work cooperatively to avoid discovery disputes related to ESI and to be guided by the Sedona Principles to resolve any disputes which may arise concerning ESI.

   h. The parties have discussed potential settlement and will continue to discuss the possibility of settlement through discovery.

### 7. CONSENT

All parties have consented to the exercise of jurisdiction of a magistrate judge.

### 8. DISCOVERY LIMITATIONS

   a. Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

The parties agree that discovery will proceed according to two groups of defendants: (1) BCCF Defendants; and (2) CDOC Defendants.

   1. **Depositions:** The parties propose that Plaintiff and Defendant party groups shall each be limited to 10 depositions, including named parties, Rule 30(b)(6) witnesses, and

experts.

    2. **Interrogatories:** Plaintiff will be limited to 25 interrogatories as to each Defendant group (25 interrogatories as to CDOC Defendants and 25 interrogatories as to BCCF Defendants), and each Defendant group will be limited to 25 interrogatories.

b. The parties do not propose any limitation on the length of depositions other than that stated in Fed. R. Civ. P. 30(d)(1), except that the parties will confer in order to reach an agreement about the reasonable length of time for each deponent in advance of a Rule 30(b)(6) deposition.

c. Plaintiff will be limited to 25 requests for production of documents directed to each defendant group, and each defendant group will be limited to 25 requests for production of documents. Plaintiff will be limited to 25 requests for admissions as to each defendant group, and each defendant group will be limited to 25 requests for admissions.

d. Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions: All discovery requests must be served 45 days before the discovery cut-off date.

e. Other Planning or Discovery Orders

    1. Inadvertent Production of Privileged Documents.

Pursuant to this Order, the production of privileged or work-product protected documents, whether inadvertently or otherwise, is not a waiver of the privilege or protection, consistent with Federal Rule of Evidence 502(d).

## 9. CASE PLAN AND SCHEDULE

a. Deadline for Joinder of Parties and Amendment of Pleadings: <u>July 30, 2024</u>

b. Discovery Cut-off: <u>March 31, 2025</u>

c. Dispositive Motion Deadline: <u>May 15, 2025</u>

d. Expert Witness Disclosure

   1. The parties shall identify anticipated fields of expert testimony, if any.

      i. **Plaintiff:** Plaintiff anticipates expert testimony in the fields of religion and corrections.

      ii. **BCCF Defendants:** BCCF Defendants anticipate expert testimony in the field of religious exercise in the correctional setting as well as an expert in the field of correctional facility operations, and any necessary rebuttal experts in accordance with Rule 26.

      iii. **CDOC Defendants:** CDOC Defendants anticipate calling an expert to testify regarding Plaintiff's religious exercise, religious accommodations in the corrections environment, and any necessary rebuttal experts in accordance with Rule 26.

   2. Plaintiff and each Defendant group shall each be limited to a total of 2 retained affirmative expert witnesses, in addition to rebuttal experts.

   3. The parties shall designate all affirmative experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before <u>January 21, 2025</u>.

e. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before <u>February 19, 2025</u>.

f. Identification of Persons to Be Deposed:

| Deponent | Date of Deposition | Time of Deposition | Expected Length |
|---|---|---|---|
| Rodney Eaves | TBD | TBD | 7 hours or less |
| David Hested | TBD | TBD | 7 hours or less |
| Steven Salazar | TBD | TBD | 7 hours or less |
| Dean Williams | TBD | TBD | 7 hours or less |
| Travis Trani | TBD | TBD | 7 hours or less |
| Gypsy Kelso | TBD | TBD | 7 hours or less |
| Marshall Griffith | TBD | TBD | 7 hours or less |
| Jason Smith | TBD | TBD | 7 hours or less |
| Colin Carson | TBD | TBD | 7 hours or less |
| Jerry Roark | TBD | TBD | 7 hours or less |
| CDOC Rule 30(b)(6) witnesses | TBD | TBD | 7 hours or less |
| BCCF/CoreCivic Rule 30(b)(6) witnesses | TBD | TBD | 7 hours or less |
| Other individuals disclosed pursuant to Fed.R.Civ.P. 26 or otherwise noticed by the parties. | TBD | TBD | 7 hours or less per witness |
| Other witnesses to be identified during the course of discovery | TBD | TBD | 7 hours or less per witness |

**10. DATES FOR FURTHER CONFERENCES**

a. Status conferences will be held in this case at the following dates and times:
TBD

        trial prep, jury instructions conference  9:30 a.m.

**b.** A final pretrial conference will be held in this case on 12/2/2025 at o'clock ____ m. A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference. 10-day jury trial to commence on January 26, 2026, at 8:30 a.m.

## 11. OTHER SCHEDULING MATTERS

**a.** Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement: none.

**b.** The parties anticipate the jury trial will take up to 10 days.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case. & Mag. J. discovery dispute procedures. With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

## 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this  11th  day of  June        , 20 24 .

                                                 BY THE COURT:

                                                 Honorable Kathryn Starnella
                                                 United States Magistrate Judge

APPROVED:

*s/ Stephanie M. Frisinger*
David G. Maxted
Stephanie M. Frisinger
MAXTED LAW LLC
1543 Champa Street Suite 400
Denver, CO 80202
dave@maxtedlaw.com
stephanie@maxtedlaw.com
303-353-1535
*Attorneys for Plaintiff*

*s/ Edmund M. Kennedy*
Edmund M. Kennedy
Katherine N. Hoffman
Andrew D. Ringel
HALL & EVANS, LLC
1001 17th Street, Suite 300
Denver, CO 80202
303-628-3404
kennedye@hallevans.com
hoffmank@hallevans.com
ringela@hallevans.com
*Attorneys for BCCF Defendants*

PHILIP J. WEISER
Attorney General

*s/ Philip T. Barrett*
PHILIP T. BARRETT*
MARK LOCKEFEER*
Assistant Attorneys General
Civil Litigation & Employment Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: (720) 508-6659
FAX: (720) 508-6032
Email: Philip.barrett@coag.gov;
Mark.lockefeer@coag.gov
*Counsel of Record
*Attorneys for CDOC Defendants*

16